## Lewis's Estate.  Rhodes's Appeal.

[Marked to be reported.]

*Married women—Earnings of—Act of June 3, 1887.*

The first section of the act of June 3, 1887, P. L., 332, which provides that " property of every kind owned, acquired or earned by a woman before or during her marriage shall belong to her and not to her husband," includes the wages of labor earned by a married woman.

*Claim for services—Action—Contract—Husband and wife.*

A married woman who attends upon a boarder, cleans his room, and administers medicine to him when he is sick, is entitled to recover compensation for her services in her own name, although the contract for boarding was made with her husband.

*Services—Presumption of payment.*

Such service is not that of an ordinary house servant, and therefore the fact that she did not present a claim for her services for a considerable time after they were performed will not prevent a recovery.

Argued May 16, 1893.  Appeal, No. 310, Jan. T., 1893, by Sarah Rhodes, claimant, from decree of O. C. Lancaster Co., dismissing exceptions to report of auditor, distributing estate of John C. Lewis, deceased.  Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Exceptions to auditor's report distributing decedent's estate.

Before the auditor, Wm. N. Apple, Esq., appellant claimed for twenty-five weeks nursing of decedent at $10 per week, $250; for three years washing, $156, and five weeks nursing in last illness, $50.  Decedent died in February, 1890.  Appellant presented her claim to the administrator in her husband's lifetime.  The auditor found upon the claim as follows :

" The auditor finds as a fact that, at the time these services were performed, Mrs. Sarah Rhodes was the wife of Israel Rhodes, and that they were living together as man and wife during all the time that Mr. Lewis lived with them.  That Israel Rhodes is now dead, having died on September 27, 1891, since the death of John C. Lewis.  That Rhodes was a day laborer, and that Mrs. Rhodes performed the services to John C. Lewis, namely, washing the bed clothes, washing Lewis's clothes, washing and scrubbing the chairs and floor which had

been soiled by the filthy excrement which dropped from the person of Lewis, dressing the running sore on his leg, and, in fact, performing all the services which an old man in Lewis's condition required. The claim is a meritorious one, although the amount of the claim as fixed by Mrs. Rhodes's bill is somewhat exorbitant.

" The auditor also finds as a fact that at the death of John C. Lewis, Israel Rhodes was indebted to Lewis to the amount of $150 or more, and that at his death Israel Rhodes was insolvent."

The auditor held that as the work had not been done by Mrs. Rhodes in pursuance of a regular business or trade of nursing or washing, her earnings belonged to her husband and she could not recover.

Exceptions to the adjudications were dismissed by the court, LIVINGSTON, P. J.

*Errors assigned* were (1) not allowing claim; (2) not allowing claim, less $150 due by Isaac Rhodes; (3) dismissing exception to disallowance of claim; (4) confirmance of report.

*D. F. Magee*, for appellant.—In general, the wife cannot join in a contract made during the marriage as for her work and labor. But when the wife can be considered as the meritorious cause of action, as of a bond and other contract under seal, or a promissory note be made to her separately, or with her husband, or if she bestows her personal labor and skill in curing a wound, etc., she may join with her husband. Chitty's Pleading, 34; Addison on Contracts, Morgan's ed. § 1394.

The contracts of a married woman were absolutely void at common law, but they have been held valid when set up by her in her own behalf, and when she is not in default in performance on her part, she has a right to insist upon defendant's performing his part: Ray v. Western Penn. N. G. Co., 27 W. N. 230; Kahn v. Pickard, 5 W. N. 537.

The general purpose of the act of 1887 is clear enough. It is to give to married women the same freedom of ownership, disposition and control of their property and earnings, and the rights and remedies incident thereto, that men have over theirs: Endlich & Richards on Married Women, § 246; Shea v. Maloney, 52 Conn. 327 ; Carlton v. Carlton, 72 Me. 115.

A married woman is entitled to the wages of her labor: Real Est Co. v. Roop, 132 Pa. 496; Koechling v. Henkel, 144 Pa. 215; Bauck v. Swan, 146 Pa. 445; Small v. Small, 129 Pa. 366; Latrobe B. & L. Association v. Fritz, 152 Pa. 224; Frey v. Reinsmith, 7 Pa. C. C. R. 115.

The same rule has been applied in other states: Mason v. Dunbar, 43 Mich. 407; Peterson v. Mulford, 36 N. J. L. 418; Benson v. Morgan, 50 Mich. 77; Moore v. Foote, 34 Mich. 443; Shea v. Maloney, 52 Conn. 327; Meriwether v. Smith, 44 Ga. 541; Birkbeck v. Ackroyd, 74 N. Y. 356.

The English statute of 1870, upon which our act of 1887 is modeled, has received the same construction as we are contending for: Addison on Contracts, Morgan's ed., § 1380.

*A. C. Reinoehl*, for appellee.—If the claim had been brought in the name of the proper party it would come within the class of cases referred to in McConnell's Ap., 97 Pa. 31, in which the court says, " Where a person serves in the capacity of a domestic servant and no demand for the payment of wages is made by the servant for a considerable period after such services are terminated, the presumption is either that the wages have been paid or that the service was to be performed on the footing that no wages were to be paid."

Prior to the act of 1887, in McDermott's Ap., 106 Pa. 358, it was well settled law that the earnings of the wife belonged to the husband, save in certain exceptional cases specified in various acts. The only change of powers and liabilities of a married woman, by the act of 1887 as defined by the Supreme Court in Real Estate Co. v. Roop, 132 Pa. 496, and Koechling v. Henkel, 144 Pa. 215, seems to be (*a*) where she engages in trade or business, (*b*) in the management of her separate estate, and (*c*) for necessaries.

OPINION BY MR. JUSTICE GREEN, July 19, 1893:

The concluding clause of the first section of the act of June 3, 1887, P. L. 332, provides that " property of every kind owned, acquired or earned by a woman, before or during her marriage, shall belong to her and not to her husband." The wages of labor are *earned* and they are certainly property of some kind. If it was not intended by the act of 1887 to confer upon a

married woman an exclusive property in the earnings of her
own hands, we cannot understand what must be done with the
word *earned* in the text of the act. The act deals with the
subject of property acquired by a married woman, and it ex-
pressly provides that as to all property which she owned, and
all property which she *acquired*, either before or after marriage,
it "shall belong to her and not to her husband." In this same
connection, and as a part of that same sentence, it provides that
all property which she *earned* before or during marriage shall
also "belong to her and not to her husband." The same title
which she has by virtue of ownership or by virtue of acquisi-
tion, she has also by virtue of *earning.* How is it possible for
us to separate these several modes of obtaining title, and say as
to part of them the law means absolute and exclusive owner-
ship, and as to the other it does not? The resulting, exclusive
ownership, is a quality that belongs to all three methods alike.
We have no power to divide them and say as to the property
owned, or the property acquired, it "shall belong to her and
not to her husband," and as to the property earned by her it
shall not belong to her but shall belong to her husband. The
title to her earnings is precisely as good as the title to what she
owned and what she acquired. We hold therefore that since
the act of 1887 the earnings of a married woman "belong to her
and not to her husband." Worcester defines the verb "earn"
thus, "to gain, get, obtain, or acquire as the reward of labor or
performance of some service." We do not think the words of
this act need any refining or any extended process of reasoning.
Its plain blunt meaning is that the property which a married
woman earns "shall belong to her," and further, it shall not
belong "to her husband." It is of no use to go back to the de-
cisions prior to the act in order to define her rights, the act it-
self defines them, and it must be judged by its own words and
by nothing else. There is nothing in any of our recent decis-
ions under the act which militates against this ruling, in the
least, but on the contrary much to corroborate it.

This being so, nothing is left of this case but the considera-
tion of the appellant's claim. The auditor held that it was
meritorious, but that he could not allow it, because, being earn-
ings, it belonged to her husband and not to her. He thought
she could not sue for it and therefore she could not recover it.

We are very clearly of opinion that she can sue for her earnings under the second section of the act, and that she need not join her husband in such suit if he were living. As the auditor did not pass upon the merits of the claim, they are not before us, and we cannot review them. The claim seems to us to be excessive and therefore it must be scrutinized closely. There was much delay in preferring it, but that may be because the appellant's husband was indebted to the deceased and she did not want to annoy him with it. But that circumstance will not deprive her of her legal right. She was not an ordinary house servant, and therefore does not come within the operation of the principle declared in McConnell's Appeal, 97 Pa. 31. As the record stands now she seems to be fairly entitled to a reasonable compensation, but that is a subject which must first be determined by the auditor.

The decree of the orphans' court is reversed at the cost of the appellee, and the record is remitted, with instructions to the court below to recommit the case to the auditor to determine the merits of the appellant's claim.

MR. JUSTICE MITCHELL, dissenting:

I concur entirely in the view announced in the opinion of the court that the earnings of a married woman are property within the terms of the act of June 3, 1887, and belong to herself and not to her husband. But I cannot see any room for the application of this law to the present case. Whatever may be the rule as between husband and wife themselves, or as between the wife and other parties when she is following a distinct employment which is notice to all persons dealing with her that she is making earnings of her own, the presumption, when she and her husband are working together in the same employment, is violent, that the joint earnings go into the common stock, and that a contract with the husband includes the joint services of both. Under such circumstances nothing short of an express contract can give the wife a separate action. This is especially so in the present case where the service rendered was of a kind incidental to the contract with the husband, and differed from the ordinary course of such contracts only in degree. Personal attendance, cleaning up his room, and administering medicine when sick, are parts of household work

commonly performed by the woman of the house or her servants, and are presumably included in the price of board paid to the head of the house, in this case the husband. If the boarder is unusually troublesome and the stipulated board is not compensatory, the remedy, as in any other case of a bad bargain, is to make a new one, not to go on for three years and then when the other is dead put in a claim for separate services. As to the item of washing, the presumption that it was or was not to be included in the board, depends on the custom of the time and place among people similarly situated, but whatever the presumption may ordinarily be in this respect, the fact that in the present case the service was rendered for more than three years without any intimation that the wife was to present a separate claim for it, was conclusive against such claim. Under such circumstances nothing short of an express contract could sustain it and that there was certainly no offer to prove, even if the evidence does not affirmatively concede its absence. The right of a married woman to her labor, as against her husband, is not questioned, but her right to sue for services contracted for by her husband, and rendered by her in the care of a boarder under her husband's contract, and without notice to the boarder, is not sustainable.

Though not entirely for the reasons advanced by him, the result reached by the learned auditor was right.

MR. JUSTICE WILLIAMS concurs in this dissent.