## Arbuckle's Estate.

502

Argued October 13, 1936.   Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*John G. Frazer,* with him *Robert L. Kirkpatrick* and *Reed, Smith, Shaw & McClay,* for appellants.

*John Joseph O'Connell,* Assistant County Solicitor, with him *Charles Alvin Jones,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE LINN, November 23, 1936:

These appeals[1] complain of a personal property tax assessment under section 1 of the Act of June 17, 1913, P. L. 507, 72 PS section 4821, as amended. The county presented the claim at the audit of the second and partial account. The property was held taxable within either of two classes: as included in the words (a) "all articles of agreement and accounts bearing interest," and (b) "all moneys loaned or invested in other States,

---

[1] There are three appeals, one by the two executrices of Christina Arbuckle and one by each of the same persons as beneficiaries under the will.

Territories, the District of Columbia, or foreign countries."

Christina Arbuckle, a resident of Pittsburgh, Pennsylvania, died in 1927, one of several partners conducting business pursuant to Articles, in New York as Arbuckle Brothers, in Pittsburgh as Arbuckles & Company, and in Brazil as Arbuckle & Co.

The appellants, Margaret A. Jamison and Martha A. Jamison, are the surviving executrices, next of kin and sole beneficiaries of the residuary estate which, after payment of all legacies, inheritance taxes and administration expenses, is represented by decedent's capital contribution and deposit (as defined in the Articles) in the Arbuckle partnership.

The first and partial administration account was filed in 1929 and "Because of uncertainty as to the amount of additional Federal estate taxes payable by the estate and the necessity to liquidate decedent's interest in Arbuckle Brothers in order to pay all taxes and also the large claims against the estate," the balance was awarded back to the accountants for future accounting. It is this second account that came on for audit and is here for review. The county claimed a tax on the balance of decedent's interest in the partnership as subject to taxation in the classes stated above.

The Articles of Partnership provide that a deceased partner's survivors should succeed to and pay for the decedent's interest as specified. Part of the provision is: "The amount due the deceased or withdrawing or retiring partner or partners shall remain as a deposit with the surviving partners in the proportions in which they severally owe said amount for the period of two years, drawing interest at the rate of four and one-half (4½%) per centum per annum, payable quarterly. The continuing partner or partners shall then commence to pay off the interest of the retiring or deceased partner or partners by paying twenty-five (25%) per centum thereof at the end of each period of three months thereafter."

At the audit of the first account in 1929, the personal property tax claimed from decedent's death to the end of 1929 was assessed. The tax for that period is not in question.

The claim allowed in the adjudication of the second account, now before us, was for the six years 1930 to 1935. When this account was filed, the accountants had not made payment of all allowable claims against the estate and gave the following reason for filing it; "this account was filed for the purpose of procuring the approval of this court to certain expenditures shown in the account so that the estate can obtain a refund of an overpayment of Pennsylvania inheritance taxes. The Board of Finance and Revenue has refused to give credit for these expenses until the account has been approved by this court." The accountants therefore asked that the balance be awarded back to them for further accounting. Such a decree was made.

The question is whether the deposit[2] with the partnership, the decedent's interest, is subject to the four mill tax for the period mentioned. The surviving members of the firm now interested are Martha A. Jamison and Margaret A. Jamison, and they are interested in equal shares. They also, in equal shares, take the balance for distribution which is composed entirely of the deposit.

The county had the burden of showing that the property was taxable. "No tax can be collected in the absence of a provision clearly imposing it upon the class to which the taxpayer or his property belongs": *Callery's Appeal*, 272 Pa. 255, 272, 116 A. 222. "It is well settled that tax laws are to be construed most strictly against

[2] Deposit is defined in Article III as follows: "In addition to the capital as above, each partner shall have the privilege of depositing to his or her personal credit with the firm such amount, or amounts, as he or she may see fit, and any surplus of the firm owned by any of the partners, over and above the amount of capital specified in Article II and left with the firm shall constitute a deposit under the Article." The term is also used in Article IX quoted above.

the government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of law": *Husband's Estate,* 316 Pa. 361, 369, 175 A. 503.

Dealing first with the conclusion of the learned court below that the deposit was within the words "all articles of agreement and accounts bearing interest," the appellants submit that the Articles of Partnership specified a period of two years during which the surviving partners had agreed to pay interest, and that interest was not payable after the expiration of that period. In disposing of this contention, the learned auditing judge held: "While this estate was in the course of administration the executrices could not destroy the obligation to pay interest and thereby defeat the claim for tax before final distribution. The executrices did not own this account individually. . . ."

Until the end of 1931, interest was credited by the partnership to the deposit; appellants say that this was done during the first two years in accord with the specified provision of the Articles so requiring, but that thereafter, during the years 1930 and 1931, the credit of interest was a bookkeeper's error; that interest was not, in fact, payable during that period and should not have been credited to the estate. They say that when the error was discovered they agreed with each other that no interest should thereafter be paid by them as surviving partners to themselves as executrices (merely to be distributed to themselves as legatees) and that the court should now disregard their accounts stated for 1930 and 1931, and deal with the deposit as though interest for those years had not in fact been credited. We all agree that in this proceeding the learned court below properly declined to treat as non-interest bearing the account as stated by the partnership and the appellants for those two years.[3] Their own conduct had settled the fact.

---

[3] The record shows: "Q. And all this is the payment of interest under the arrangement set forth in the articles of copartnership in

But a different question is presented concerning the assessment for the four-year period remaining; as to this assessment, we are constrained to differ from the learned court below. The record shows that interest during this period was neither paid nor credited. No principle of law prevents a decedent's personal representative from discharging or releasing a lawful claim. The legal title to the *chose* is in him; he may deal with it as absolute owner, responsible of course for fraud or other breach of trust; but if his action is not challenged by an interested party it is final. See *Pusey v. Clemson*, 9 S. & R. 204, 211; *Black's Appeal*, 25 Pa. 238; *Stitzel's Estate*, 221 Pa. 227, 70 A. 749; Sec. 40, Fiduciaries Act, 1917, P. L. 447, 508, 20 PS section 787; *Jeffries v. Mutual Life Ins. Co.*, 110 U. S. 305, 310; 85 A. L. R. 176. Assuming, without deciding, that the county could ques-

---

1926? A. That interest should have been stopped in 1929, because there was no articles beyond 1929, but I [head bookkeeper] continued to make the entries, and I was wrong. Q. But the credits have been given, have they not? A. The entries have been made on the books, yes, sir; there is no doubt about that. You can't deny facts. Q. Mr. Blackburn, during the years that you made the entries for the allowance of this interest to the estate of Christina Arbuckle, you were filing the income tax returns for the partnership in the estates of William A. Jamison and the two Jamison sisters? A. Yes."

The following also appears: "Q. So when Miss Arbuckle died that amount was charged to her Deposit Account? A. Taken out of her Deposit Account because the money was still in the business and all her estate was interested in was her estate. Q. So you charged against her— A. Her estate is valued under the partnership agreement at $5,079,000.00, yes. Q. So you said something about charging interest; you charged interest on both sides of the ledger, didn't you? A. We charged interest on one side and credited it on the other side. Q. Now, you say in the income tax return you showed a payment of interest by Arbuckle Brothers? A. Yes. Q. Because that corresponds with your books? A. For 1930 and '31, yes, sir. Q. And your income tax return had to correspond with your books? A. Yes, sir. Q. But that didn't mean the actual payment of interest either way? A. No, it did not; just bookkeeping."

tion the release of a claim for fraud or other illegal conduct, there is no evidence showing legal infirmity in the transaction.

The only persons interested are Martha A. Jamison and Margaret A. Jamison. As to the claim each had on the other, all that was needed, to discharge their obligations as surviving partners and also their obligations as accountants, was an exchange of releases. No account bearing interest existed within the contemplation of the statute, during the four-year period. This conclusion is not inconsistent with the rule applied in *Dalzell's Estate,* 96 Pa. Superior Ct. 467, that, during administration, the personal representative is taxable for all property in any of the classes created by the statute. The rule does not prohibit the conversion of a taxable investment into one that is not taxable during the course of the administration.[4] The representative's duty is to convert the assets; this asset, the partnership interest, was a chose in action *(Arbuckle's Estate,* 252 Pa. 161, 97 A. 186; *Blodgett v. Silberman,* 277 U. S. 1) which the representatives were authorized to convert from a thing in action to a thing in possession; meanwhile, if they found it desirable to give up interest no rule of law prevented it; if they gave it up, no creditors or beneficiary complaining, nothing was left to tax—no account bearing interest. We are not dealing merely with interest payable under the partnership articles, but with a subsequent transaction in which debtor and creditor agreed that no interest should thereafter accrue or be paid, even if we assume that liability therefor might have resulted

---

[4] "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law": *Bullen v. Wisconsin,* 240 U. S. 625, 630; see also *Tranter v. Allegheny Co.,* 316 Pa. 65, 84, 173 A. 289; *Gaw v. R. R. Co.,* 196 Pa. 442, 46 A. 372; *U. S. v. Isham,* 84 U. S. 496.

by implication but for the subsequent agreement. On such a record, it must be said that the county has not sustained the burden of showing that the property is within the first class referred to by the learned court.

In considering the asset taxable as "moneys loaned or invested in other States . . ." the learned court said: "But even if this [liability to taxation as an account bearing interest] should not be the correct solution, the account would be taxable as money invested in or loaned to Arbuckle Brothers of New York by residents of this state."

The words "all moneys loaned or invested in other States" do not seem to have come up for construction in either of our appellate courts. It is to be noticed that in stating the various classes of taxable property[5] the legislature first dealt with many kinds or forms of loans, and

---

[5] "All mortgages;

"all moneys owing by solvent debtors whether by promissory note, or penal or single bill, bond or judgment;

"all articles of agreement and accounts bearing interest;

"all public loans whatsoever, except those issued by this Commonwealth or the United States, and those made taxable for State purposes by section seventeen hereof;

"all loans issued by any corporation, association, company, or limited partnership, created or formed under the laws of this Commonwealth or of the United States, or of any other State or government, including car-trust securities and loans secured by bonds or any other form of certificate or evidence of indebtedness whether the interest be included in the principal of the obligation or payable by the terms thereof, except such loans as are made taxable for State purposes by section seventeen hereof;

"all shares of stock in any bank, corporation, association, company, or limited partnership, created or formed under the laws of this Commonwealth or of the United States, or of any other State or government, except shares of stock in any bank, corporation, or limited partnership that may be liable to a tax on its shares or its capital stock for State purposes under the laws of this Commonwealth, or relieved from the payment of tax on its shares or capital stock for State purposes by the laws of the Comonwealth;

"all moneys loaned or invested in other States, Territories, the District of Columbia, or foreign countries; . . ."

followed those classes by various kinds of investments in other forms of intangible property with specified exceptions; after enumerations so made came the general words "all moneys loaned or invested in other States," etc. We need not speculate about what was intended to be included in those words; definition may be left until cases require it. This case does not.[6] The conception of loaning money is well understood both in the popular and technical usage. Generally it is the payment of money by one to another to be repaid some future day. Those elements are lacking. Neither decedent in her lifetime nor her personal representatives after her death paid any money to the partnership as a loan.

If it was not a loan, was it an investment in some other sense and taxable? When decedent died, she and both appellants were residents of Pennsylvania. The situs of the *chose* was in Pennsylvania. The capital of the partnership was doubtless employed in trade in many other jurisdictions. An investment is frequently defined as the conversion of cash into property or as the property into which it is converted. We think the words read in the light of the rest of the section cannot have been intended to include the money employed by a partnership composed of residents of Pennsylvania, engaged in this state and elsewhere, whether as capital contribution or resulting accretions in the conduct of the business wherever it may have been transacted. The onus was on the county to bring the property within a taxable

---

[6] It may be that their meaning must be determined by the *ejusdem generis* rule; if so, the classification which precedes them, furnishes the clue (cf. *Burns v. Coyne,* 294 Pa. 512, 516, 144 A. 667). And this seems to be the interpretation applied in practice; it is matter of common knowledge that the blank forms issued by the taxing authorities, for example, in Philadelphia County, requiring taxables to make returns of personal property, contain no blank space for returning "all moneys loaned," etc., though such spaces are furnished for all the classes preceding it.

class and it has failed to bring it within the class in which the court held it to be taxable.

The decree is modified; the record is remitted to enable the learned court below to allow the tax for the years 1930 and 1931, and to disallow it for the years 1932 to 1935 inclusive. Costs to be paid out of the fund for distribution.