## Krause's Estate.

Argued January 26, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ralph H. Schatz,* for appellant.

*Robert E. Haas,* with him *Charles J. Margiotti,* Attorney General, and *John H. Diefenderfer,* Special Deputy Attorney General, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, March 22, 1937:

The question here to be met is whether the transfers of two funds by Lewis D. Krause in his lifetime to Albright College, School of Theology of the Evangelical Church, Reading, Pa., are liable to the transfer inheritance tax. The court below held they are.

The tax is imposed by the Act of June 20, 1919, P. L. 521, as amended, the latest amendment being made by the Act of July 14, 1936, P. L. 44, 72 P.S. 2301. As amended, Art. I, Sec. 1 of the Act reads: ". . . a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases: . . . (c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

Was the gift before us made in contemplation of death? It is not argued that it was. Was it intended to take effect in possession at or after death? Possession of the fund by the donee was complete before the death of the donor. Was enjoyment of the fund postponed until death or thereafter? This is the concrete question in the case.

The donor, in consideration of the two gifts, one of $35,000 and the other of $5,000, received in return two similar writings, the material parts of one of which is as follows: "Whereas, Lewis D. Krause of Allentown, Penna., has given to the Albright College, School of Theology of The Evangelical Church, Reading, Pa., the sum of thirty five thousand dollars. Now therefore, the said Albright College, School of Theology of The Evangeli-

cal Church, Reading, Pa., in consideration thereof, here-
by agrees to pay to said Lewis D. Krause during his nat-
ural life an annuity of six (6) per cent, in semi-annual
payments of one thousand fifty dollars each, said pay-
ments to cease on the death of said Lewis D. Krause and
the said sum donated by Lewis D. Krause, as aforesaid,
is to be considered as an executed gift to said Albright
College, School of Theology of The Evangelical Church,
and belongs to said Albright College, School of The-
ology, from this date without any account or liability
therefor." This writing was signed by the Treasurer of
the College.

Looking at this document we see that the donor "has
given" the fund to the donee that "the said sum donated
is to be considered as an executed gift" to the college
and "belongs to" the college "from this date without any
account or liability therefor." In view of this plain
language, it is difficult to see how it can be correctly
said that the college did not have the "enjoyment" of the
gift. It is obvious that the donor could not have taken
the fund away from the college. He retained no interest
either in the fund itself or in the income therefrom.

It is argued by the Commonwealth that because an
annuity, equal to six per cent annually on the principal
of the gift, was to be paid to the donor, enjoyment of the
fund did not pass to the college until the giver died.
But the writing says that it did, that the gift was an
executed one when made, and belonged to the recipient
"from this date without any account or liability there-
for." There was no restriction on what the college could
do with the money. It could do with it as it pleased.
The money has been mingled with the general funds of
the college, and is not held by it separate and intact. It
was not the fund which was liable for the payments to
the donor but the college itself.

The general principle which governs transactions such
as the one we are considering was stated by Mr. Jus-
tice CLARK in *Reish v. Commonwealth*, 106 Pa. 521, 526,

"One certainly cannot be considered, as in the actual enjoyment of an estate, who has no right to the profits or incomes arising or accruing therefrom. . . . the whole matter depends upon the single fact, whether or not the transfer was made or intended to take effect, in enjoyment at the death of the grantor. . . . [to be free from tax] it must be such a conveyance as parts with the possession, the title, and the enjoyment in the grantor's lifetime." Here, the writing declares such to be the fact. In the Reish case a bond was taken, conditioned for the payment to the grantor for life of the net income accruing from the property conveyed. As was pointed out in the opinion (p. 526), "John Reish, was entitled to receive the same income and profits from the property, during his life, as if the transfer had not been made." Such is not the case here. The donor was to get the annuity in a certain number of dollars, irrespective of what the fund made.

We think the reasoning of the present Chief Justice in *Barber's Estate,* 304 Pa. 235, 155 A. 565, convincingly demonstrates that there is no tax liability in the case now in hand, because the payments to be made to the giver of the fund were in the shape of an annuity, not of income on the fund. After pointing out that the payments were income on the fund, not an annuity, it was said (p. 241): "If it were an annuity, the property or fund would become dissolved among the general properties of the Board [it is stipulated that such is the fact in this instance], but the instruments specifically require that the fund should not only be kept alive as the basis of an income, but, should be kept intact as a trust fund forever. . . . The distinction between the income here provided for, and the purchase of an annuity so strongly urged by the appellant is obvious. . . . While the fund was in the physical possession of the Board and was to remain intact, the beneficial enjoyment of the fund remained in the grantor and Mae Lynd, during life. The surplus, if any, was to be paid to the seminary.

At their death, the entire income was to be used for the seminary. It was not until the donor's death, and, as to part of the property, until Miss Lynd's death, that the Board would have any absolute right to use all the income for the seminary. Before that time, its right was contingent on the amount of income the property brought." Here, the entire income and the total fund went to the college at the time the gift was made. As was further said in the *Barber* case (p. 240) : "It is not the function of a judicial tribunal 'to impose taxation, which is a species of confiscating by a strained construction of doubtful legislation.' . . . If there is doubt or uncertainty as to the imposition of the tax, that doubt or uncertainty should be resolved in favor of the taxable. The burden is on the Commonwealth to show, first, that the agreements contemplated the payment of income or profits as distinguished from the fixed charge that had no relation to the principal, and, second, that the actual receipt of the income at Mrs. Barber's death was what was intended to be covered by the statute by the words 'take effect in enjoyment after death.'" The clear implication from this opinion is that if the sums to be paid were an annuity, the fund would not be subject to tax.

Most, if not all, of our cases, as well as a number from other jurisdictions, adjudicating gift inheritance tax questions are cited in the briefs. We think it not necessary to review them, as most are somewhat afield in facts from the situation now before us.

Concluding, as we do, that the enjoyment of the fund given by the decedent to the college was not postponed until after his death, it follows that the gift is not taxable.

The decree is reversed at the cost of the Commonwealth.