Ross, Appellant, *v.* Philadelphia et al.

Argued October 22, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*John W. Kephart,* for appellant.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Francis F. Burch,* City Solicitor, for appellees.

34

Reverend Francis J. Ross, a Roman Catholic Priest of the Archdiocese of Philadelphia, and a resident of the city, has appealed from a decree of the court below sustaining preliminary exceptions to, and dismissing, his bill in equity by which he sought injunctive relief for himself, and all other persons similarly situated, against the enforcement of a portion of a certain regulation promulgated on November 12, 1940, under the alleged authority of Section 6 of an ordinance of the City of Philadelphia, approved December 13, 1939, and known as the "Income Tax Ordinance."

A general view of the applicable provisions and scope of this legislation will pave the way to an understanding of the issue with which we are now concerned. Its purpose, as stated in its title, is the imposition of a tax for general revenue purposes upon, inter alia, "salaries, wages, commissions and other compensation earned after January 1, 1940, by residents," and "on the net profits earned ...... on businesses, professions or other activities conducted by such residents." The word "business" is used in the ordinance in a most comprehensive sense and is thus defined therein: "An enterprise, activity, profession, or undertaking of any nature conducted for profit or ordinarily conducted for profit, whether by an individual, copartnership, association, or any other entity." The power of the city to enact the ordinance under the Act of August 5, 1932, P. L. 45, 53 PS §4613, was considered by us in *City of Philadelphia v. Schaller,* 148 Pa. Superior Ct. 276, 25 A. 2d 406, and the general constitutionality of this legislation was determined in favor of the city in *Dole v. Philadelphia et al.,* 337 Pa. 375, 11 A. 2d 163.

As pointed out in the Dole case, the ordinance imposes an annual tax of 1½% on the earned income and only on *earned income,* of residents of the city and also upon such income earned in the city by non-residents. This earned income is divided into two classi-

fications: (a) "Salaries, wages, commissions, and other compensation" paid by employers, who are required to deduct the tax at the time of payment and pay it to the Receiver of Taxes; and (b) "The net profits earned" upon "businesses, professions, or other activities," carried on in the city, as to which each person whose profits are subject to the tax is required to make his or her own return and pay the tax to the Receiver of Taxes.

It is observed in the Dole case, (p. 380) that: "...... the 1939 ordinance first covers salaries and wages of residents and of non-residents and then covers net profits of residents and of nonresidents and definitely shows an intention to subdivide the great class of earned incomes into its two great and legitimate classes,—income from salaries and wages and income from net profits."

We are not here concerned with non-residents nor directly with salaries, wages, commissions, or other compensation paid by an employer. The controversy relates exclusively to the second classification above mentioned.

"Net profits" are defined in Section 1 of the ordinance as "The net gain from the operation of a business, profession, or enterprise, after provision for all costs and expenses incurred in the conduct thereof, either paid or accrued in accordance with the accounting system used, and without deduction of taxes based on income."

Section 6 relates to the enforcement of the ordinance. It contains three subparagraphs, only the first of which is here material. The applicable portion thereof reads:

"Sect. 6. Enforcement; Rules and Regulations; Inquisitorial Powers of the Receiver of Taxes. A. The Receiver of Taxes is hereby charged with the enforcement of the provisions of this ordinance, and is hereby empowered to prescribe, adopt, promulgate and enforce rules and regulations relating to any matter or thing

pertaining to the administration and enforcement of the provisions of this ordinance, ......"·

Under the alleged authority thus conferred, the Receiver of Taxes promulgated the following regulation on November 2, 1940:

"Clergymen, Religious Workers, Evangelists, etc.

"Marriage fees, baptismal offerings and other monies received by clergymen, religious workers or evangelists for the performance of religious services, or in connection therewith, are considered as income from a profession or activity, the net profits of which are taxable under the terms of the Ordinance.

"Salaries paid by organized religious bodies to such clergymen, evangelists or religious workers are considered taxable salaries on which deductions and remittances should be made to the City by such organized religious bodies."

We are not now concerned with the second paragraph of the regulation; the only question involved upon this appeal is thus stated by the learned counsel for appellant:

"Are voluntary offerings made to a clergyman at marriages, baptisms, funeral services, masses and prayers for the dead 'earned income' or 'net profits earned' within the meaning of the Philadelphia Income Tax Ordinance of December 13, 1939?"

Appellant, after reciting in his bill the approval of the ordinance and promulgation of the first paragraph of the regulation, continued:

"8. Plaintiff, as a Roman Catholic priest and by virtue of that office, receives free offerings of money and other articles of value from individuals at whose request marriages, baptisms and other religious services, particularly mass intentions or prayers for the repose of the dead, funeral services and daily masses, are performed by him.

"9. Under the rules, regulations, canons, faith and

discipline of the Roman Catholic Church governing the Archdiocese of Philadelphia, to which plaintiff is subject, all of the above offerings are voluntary, unenforceable by virtue of any contractual relationship, liability or responsibility, and Catholic clergymen are prohibited from asking, demanding or exacting a fee, price or consideration of any character for such services."

After averring, in substance, that although the "free offerings," admittedly received by him, are neither earned "net profits" of his religious "activities," within the intendment of the ordinance, nor do they constitute a basis from which "net profits" of any kind could be calculated under Section 1 of the ordinance, appellant charges that he has been notified to make a return and pay the specified tax upon them, or be subjected to the fines and penalties prescribed by the ordinance for failure so to do.

Pleading that the enforcement of the regulation would result in irreparable injury to him, and "all similar clergy" in the city, and that its attempted enforcement would cause a multiplicity of suits, appellant prayed that the court declare the offerings described in the eighth paragraph of the bill "not taxable" under the ordinance, and the regulation "null and void insofar as it provides for the taxation of such offerings and monies"; and that an injunction issue restraining the representative of the city from enforcing so much of the regulation as applies to the offerings in question.

Subsequently the Vice-Chairman and the Secretary of the Diocesan Consultors of the Archdiocese of Philadelphia, representing 725 Roman Catholic clergy in the City of Philadelphia, filed their petition "to join as parties plaintiff," in the bill, which petition was endorsed by the court below, "approved only to be filed."

The defendants' answer raising preliminary objections to the bill reads:

"1. On the facts averred, defendant should not be required to answer, since defendant has a full and complete defense to the plaintiff's claim, which is that the said facts do not set up any ground or cause of action requiring equitable relief.

"2. That the defendant should not be required to answer the facts averred inasmuch as the defense does not require the production of evidence to sustain it, the same being that the facts averred do not entitle the plaintiff to the relief prayed for."

After argument, the court below held that these objections were within Rule 48 of the Rules of Equity Practice; that they "strike at the very basis of the plaintiff's claim and cannot be overcome by amendments"; and that "the bill irremediably fails to state any cause of action." A final decree was accordingly entered sustaining the preliminary objections and dismissing the bill; this appeal by the plaintiff followed. As the record is presented to us, we may proceed to a consideration of the merits without considering whether the preliminary objections were strictly within the concluding paragraph of Rule 48.

A majority of the members of this court are of opinion that the first paragraph of the regulation as promulgated by the Receiver of Taxes, the validity of which is the sole issue in this case, cannot be sustained as embraced within the intendment and scope of the ordinance because it exceeds the basic aim and purpose of that enactment—the imposition of a tax upon. *earned* income alone.

The range of discussion covered in the brief for appellees and in the opinion of the court below may now be somewhat circumscribed by reason of several concessions appearing in the brief on behalf of appellant. At page eight thereof it is conceded, as it must be under the case of *Miller v. Kirkpatrick,* 29 Pa. 226, that appellant "is engaged in a profession," within the meaning of the ordinance. But that case by no means supports

the argument based upon it by appellees and the court below. The tax there involved was a tax imposed under the 32d section of the Act of April 29, 1844, P. L. 486, 497, upon the right to *engage in* "professions, trades, and occupations, except the occupation of farmers." For instance, in many counties the annual right to engage in the practice of the law was valued at $300 and each practitioner was required to pay the tax assessed upon that valuation, regardless of the amount of his professional income. That case has no application to the present issue except that it is authority for holding that the religious activities of appellant amount to the engaging by him in a "profession" within the meaning of the ordinance.

In the next place, it seems to have been assumed below that the "free offerings of money and other articles of value from individuals," referred to in the eighth paragraph of the bill, were received by appellant in lieu of a fixed salary and constituted the only compensation received by him for the rendition of his professional services. We are unable to see that such an inference is warranted. For the purposes of this appeal, the averments of the bill must be accepted as true, and it seems to us that the only inference to be drawn is that these "offerings" were made by appellant's parishioners and received by him as *gratuities* over and above, and in addition to, the regular fixed salary paid him by the congregation or mission which he regularly served. As we understand appellant's position, it is conceded that any fixed salary paid him is earned income, the tax upon which should be deducted by the organization paying such salary and remitted by it to the Receiver of Taxes in accordance with the provisions of the ordinance and the second paragraph of the regulation. If the appellees are prepared to show that the only income received by appellant consists of the offerings referred to in the eighth paragraph of the bill, as was the situation in *Lake Erie S. W. Railroad*

*Co. v. DeSong,* 109 Ill. App. 241, p. 245, an answer to that effect should have been filed. In the absence of any denial, appellees must, at this stage of the case, be held to have admitted the facts as stated in the bill and the inferences reasonably deducible therefrom.

The phrase, "net profits from a profession," as used and defined, supra, in the ordinance, carries with it the connotation of "net compensation," earned, demanded and received, for professional services rendered—the equivalent of "wages" or "salaries" under the first classification in the ordinance of earned income.

Upon the face of the bill, the "offerings" therein referred to, although received by appellant by virtue of his profession and in the performance of his religious activities, are pure gratuities which, under the canons of his church, he has no right to demand but is permitted to receive when tendered. We are unable to conclude that they constitute "earned income," within the intendment of the enactment. The Receiver of Taxes was given authority only to make rules and regulations relating to the administration and enforcement of the provisions of the ordinance. He had no authority to add any additional subject matters of taxation.

Each side has cited a number of cases relating to the use of the words "profits," "wages," "income," "earnings," etc., in instructions to juries relative to the measure of damages in negligence cases. We are unable to see their applicability to the present issue.

Nor are we persuaded that regulations promulgated by the Commissioner of Internal Revenue as interpretive of the Federal Income Tax Act, relied upon below, are in any way controlling here. The regulation of the Receiver of Taxes for Philadelphia, with which we are dealing in this case, was evidently suggested by a ruling of the Commissioner of Internal Revenue that "marriage fees, baptismal offerings and sums paid for saying masses for the dead" constitute "compensation

for personal service" within the meaning of section 22(a) of the Internal Revenue Act: Reg. 103, Sec. 19.22(a) 2.

But neither that regulation, nor any of those cited by appellees, has, so far as we are aware, been upheld in any judicial decision. It must also be noted that the Federal Act taxes both earned and unearned income from whatever source derived.

Moreover, reference may be made to a decision of the Federal Board of Tax Appeals which tends to support our conclusion in this case. In *Appeal of Greenville Textile Supply Co.*, 1 B.T.A. 152 (1924) it was held that Christmas gifts, even though given to employees, are not deductible expenses by the employer when gratuitously presented to the individuals and not given as a bonus representing additional compensation. It necessarily follows that such gifts would not be considered income to the recipients.

It is still the rule, at least in Pennsylvania, that any doubt concerning the construction of a taxing statute is to be resolved in favor of the taxpayer. "The power to impose a tax is given by statute, and an act relating thereto embraces such subjects only as are plainly within its terms. In other words, 'a tax law cannot be extended by construction to things not described as the subject of taxation' ": *Com. v. Phila. Rapid T. Co.*, 287 Pa. 70, 74, 134 A. 452, and cases there cited. See also *Arbuckle's Estate*, 324 Pa. 501, 505, 188 A. 758, and *Krause's Estate*, 325 Pa. 479, 483, 191 A. 162.

The assignment of error to the decree sustaining appellees' preliminary objections and dismissing appellant's bill is sustained.

Decree reversed, bill reinstated, and appellees directed to answer over.

DISSENTING OPINION BY RHODES, J.:

I would affirm the decree of the court below. Appellant concedes that he is engaged in a profession, and

he does not deny the constitutional or statutory power of the city to levy a tax upon either his profession or his total income, whether in the nature of earnings or gifts. Appellant asserts, however, that the ordinance restricts taxation to such income as was the *price* of services performed by the persons to be taxed, and that the contributions received for religious services were gifts, though received by virtue of, and in the performance of, the duties of the profession.

In my opinion, money given for the performance of professional services of value, no matter how made or what it may be called, cannot reasonably be construed as a tax exempt gift; such payment is earned income and not a gratuity. "Earn" means to gain, get, obtain, or acquire as the reward of labor or performance of some service. *Lewis' Estate,* 156 Pa. 337, 340, 27 A. 35. Income is no less earned income although it could not be recovered by suit; but if the income results from contributions for services it is earned income within the meaning of the ordinance. Therefore, money and other articles of value received by appellant from individuals at whose request various professional services were performed by him are earned income. There can be no difference of opinion that Christmas gifts would not be considered income to the recipients; they are not compensation for services. I think the distinction is in whether or not the transfer is made for services rendered. If no services have been rendered the contribution may be a mere gift or gratuity, and not taxable. It is an essential characteristic of a gift that it be a transfer without consideration. The absence of a price or contract does not make the payment any less income and thereby relieve it from taxation under the ordinance. It is immaterial whether appellant received a regular fixed salary, paid him by the congregation or mission which he regularly served, in so far as the present case is concerned. Other income which he may have received as a result of the practice of his profession is never-

theless taxable. I fully agree with the statement of counsel for appellees that no reason appears why clergymen should be exempt from the operation of this ordinance. As we recently said in *City of Philadelphia v. Schaller*, 148 Pa. Superior Ct. 276, at page 281, 25 A. 2d 406, at page 409: "From the plain meaning of its language [Sterling Act] it is clear that nondiscriminatory taxes were contemplated." No less can be said of the present ordinance.

The opinion of the court below, by MILNER, DAVIS, and MACNEILLE, JJ., contains a comprehensive discussion of the material features of this case, and properly concludes that appellant's bill should be dismissed.

HIRT, J. joins in this dissent.