Breitinger *v.* Philadelphia et al., Appellants.

Argued November 18, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Abraham Wernick,* Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for appellants.

*Abraham L. Shapiro,* for appellee.

*Robert Dechert,* with him *Francis L. Van Dusen* and *Barnes, Dechert, Price & Myers,* for Corporate Fiduciaries Association of Philadelphia, under Rule 61.

OPINION BY MR. JUSTICE LINN, January 3, 1950:

The City appeals from an order restraining the collection of taxes claimed under an ordinance of December 13, 1939, as amended.[1]

---

[1] City Ordinances, December 13, 1939, p. 656. We quote the title of the ordinance, italicizing certain words important in the present discussion. "An Ordinance Imposing a tax for general revenue purposes on salaries, wages, commissions and other compensation *earned*

The plaintiff is a resident of the city engaged in the practice of law. His contention is that from year to year, as required by the ordinance, he filed returns and paid all taxes due; that the City has changed its prior understanding of the meaning of the ordinance and has demanded additional taxes for past years and on an increased tax base for the current year; that the ordinance does not authorize the collection of additional tax and that the injunction was proper.

The City contends (in the words of its brief) the plaintiff is taxable on "net profits realized . . . from the purchase, sale, management and supervision of real estate [and] mortgages, . . ." i.e., that plaintiff so dealt with his real estate and mortgages as to bring himself within the tax on net profits of "businesses, professions or other activities."

Two fundamental principles should be kept in mind in considering the ordinance and its administration. The first measured the City's power to tax; the second prescribes strict construction. We said, in *Hillman Coal & Coke Co. v. Jenner Twp. et al.*, 300 Pa. 108, 112, 150 A. 293 (1930), " 'It is a principle universally declared and admitted that municipal corporations can levy no

after January 1, 1940, by residents of Philadelphia, and on salaries, wages, commissions and other compensation *earned* after January 1, 1940, by non-residents of Philadelphia for work done or services performed or rendered in Philadelphia, and on the net profits *earned* after January 1, 1939, of businesses, professions or other activities conducted by such residents, and on the net profits *earned* after January 1, 1939, of businesses, professions or other activities conducted in Philadelphia by non-residents; requiring the filing of returns and *the giving of information by employers* and those subject to the said tax; *imposing on employers the duty of collecting the tax at source*; providing for the administration, collection and enforcement of the said tax; and imposing penalties." This Ordinance has been amended as follows: City Ordinances, December 21, 1942, p. 601, repealing an amendment of December 10, 1942, which apparently never became effective; amendment of March 31, 1948, City Ordinances, 1948, page 127.

taxes, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred': 4 Dillon on Municipal Corp. 2398. And the grant of such right is to be strictly construed, and not extended by implication: Com. v. P. R. T. Co., 287 Pa. 190 [134 A. 455 (1926)]." See *Rieck-McJunkin Dairy Company Mercantile Assessment Case*, 156 Pa. Superior Ct. 9, 12, 39 A. 2d 259 (1944). The ordinance of 1939 was passed pursuant to power conferred by the Act of August 5, 1932, section 1, special session P. L. 45, 53 PS 4613, sometimes called the Sterling Act. It authorizes City Council "to levy, assess and collect . . . taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city . . . except that such council shall not have authority . . . [to tax] a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee."

The rule of strict construction was recently stated by PARKER, J., in *Scranton v. O'Malley Mfg. Co.*, 341 Pa. 200, 19 A. 2d 269 (1941) as follows: "Tax statutes should receive a strict construction: Boyd et al. v. Hood et al., 57 Pa. 98 [1868]. In cases of doubt the construction should be against the government: Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53 [1917]; U. S. v. Merriam, 263 U. S. 179, 188, 44 S. Ct. 69 [1923]; Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A 455 [1926]. While it is the duty of every citizen to bear his just share in supporting the government, he cannot be compelled to do so except in a way provided by a statute." See also *Callery's Appeal*, 272 Pa. 255, 272, 116 A. 222 (1922); *Com. v. P. R. T. Co.*, 287 Pa. 70, 74, 134 A. 452 (1926); *Arbuckle's Estate*, 324 Pa. 501, 505, 188 A. 758 (1936); *Krause's Estate*, 325 Pa. 479, 483, 191 A. 162 (1937). We are of course not dealing with the rule of exemptions: see *Callery's Appeal*, supra.

Among the conclusions of law filed by LEVINTHAL, J., were the following pertinent on this review: (1) that the ordinance "imposes a tax only upon wages and the earned net profits from the operation of a business, a profession, or an activity in the nature of a business or a profession. (2) The term 'activity' as used in the Ordinance is not intended to include isolated acts. (3) The term 'business' as used in the Ordinance involves more than the ownership of property or the receipt of income derived from the ownership of property. (4) To be 'earned' and taxable, the net profits must result from the use of some labor, management or supervision. . . . (6) The inheritance, purchase and holding of mortgages by the plaintiff did not constitute a business activity under the Ordinance. . . . (7) The purchase and holding of stocks and securities by the plaintiff was not a business activity under the Ordinance. . . . (11) The regular income or capital gains derived from personal property or from real property held as passive investments are not subject to the tax. . . ."

To give effect to these legal conclusions, paragraph 2 of the decree declares that "the plaintiff is not liable for taxes on the income derived from the real estate, mortgages, and stocks owned by the plaintiff during the years 1939 to 1947."

The chancellor made the following findings of fact: "11. The ruling [made by the Receiver of Taxes pursuant to section $6^2$ of the ordinance] pertaining to single dwellings, duplex apartments, and apartment houses of less than three stories is as follows: 'Single dwellings, Duplex Apartments, Apartment Houses of Three Stories or Less. As to this type of real estate the income derived therefrom is considered taxable or non-taxable, when the operation thereof is so extended as to constitute an "activity" within the meaning of the ordinance.'

[2] Providing for "Enforcement; Rules and Regulations; Inquisitorial Powers of the Receiver of Taxes".

12. None of the real properties owned by the plaintiff were or are more than three stories in height. 13. Prior to January 1, 1939, the plaintiff owned thirteen rented parcels of real estate, eight of which were acquired through inheritance and five of which were acquired on various dates by purchase. 14. Between 1939 and 1947, the plaintiff acquired by mortgage foreclosures or purchase certain additional properties and sold others. . . . 16. In 1939-1940 the plaintiff owned seven mortgages, six of which were inherited by him, and in the following years he never held more than seven mortgages, though he bought and maintained them for income. . . . 19. The plaintiff employed several licensed real estate agents who handled the various real estate transactions for him. 20. In 1945 the plaintiff employed a janitor to service part of a property consisting of one-story stores and garages at 467 Queen Lane, 5305-07 Laurens Street, and 5323-31 Newhall Street. He also furnished electricity to the thirty-four individual garages. 21. For the properties, described in Finding No. 20, the plaintiff relied upon the real estate agents to make necessary repairs and to deduct from the rentals, expenses for repairs, insurance and the like. 22. Aside from the above, the plaintiff spent only a little time in connection with the realty by way of telephone conversations and occasional correspondence regarding acquisition, disposal, repairs, and advertising of the property, and maintained no office other than his law office. 23. Generally, the plaintiff acquired or sold his real property upon report of a satisfactory price by the agents who negotiated with the other parties, and he participated only to the extent of executing documents and accepting prices offered. 24. Except for the instance noted in Finding of Fact No. 20, the plaintiff did not furnish any service to the tenants of his real estate, nor did he directly employ any labor in operating the real estate. . . . 27. The plaintiff received income from securities,

but did not engage in more than five stock transactions in any one year."

We have now stated the controlling facts and therefore come to the construction of the ordinance itself, keeping in mind the controlling principles stated earlier in this opinion.

The tax is obviously imposed on income *earned,* as distinguished from income otherwise realized. Section 2 of the ordinance as first enacted in 1939, provided: "Imposition of Tax. An annual tax for general revenue purposes of one and one-half[3] per centum is hereby imposed on (a) salaries, wages, commissions and other compensation *earned* after January 1, 1940, by residents of Philadelphia; and on (b) salaries, wages, commissions and other compensation *earned* after January 1, 1940, by non-residents of Philadelphia for work done or services performed or rendered in Philadelphia; and on (c) the net profits *earned* after January 1, 1939, of businesses, professions or other activities conducted by such residents, and on (d) the net profits *earned* after January 1, 1939, of businesses, professions or other activities conducted in Philadelphia by non-residents.

"The tax levied under (a) and (b) herein shall relate to and be imposed upon salaries, wages, commissions and *other compensation paid* by an employer or on his behalf to any *person who is employed by or renders services to him.* The tax levied under (c) and (d) herein shall relate to and be imposed on the *net profits of any business, profession or enterprise carried on* by any person as owner or proprietor, either individually or in association with some other person or persons.

"*Said tax* shall first be levied, collected and paid with respect to the salaries, wages, commissions and other compensation *earned* during the calendar year one thousand nine hundred and forty, and with respect to the

___

[3] Reduced by Amendment of December 21, 1942, to 1%; City Ordinances, 1942, page 601.

net profits of businesses, professions or other activities, *earned* during the calendar year one thousand nine hundred and thirty-nine: . . ." (Italics supplied.)

The words "business" and "net profits" are defined in section 1 as follows: " 'Business.' An enterprise, activity, profession, or undertaking of any nature conducted for profit or ordinarily conducted for profit, whether by an individual, copartnership, association, or any other entity." " 'Net Profits.' The net gain from the operation of a business, profession, or enterprise, after provision for all costs and expenses incurred in the conduct thereof, either paid or accrued in accordance with the accounting system used, and without deduction of taxes based on income." Section 6 authorizes the Receiver of Taxes to collect the tax and "to prescribe, adopt, promulgate and enforce rules and regulations relating" to its collection. One of these regulations was referred to by the chancellor in findings of fact 11, 20 and 21, quoted above, dealing with the word "activity" as used in the ordinance.

The word "earned" as used in section 2 of the ordinance, in the phrases " (a) salaries, wages, commissions and other compensation *earned*" and (c) "the net profits *earned* after January 1, 1939, of businesses, professions or other activities conducted by such residents . . ." is obviously used in a limited sense and not in the generally comprehensive sense in which the word is sometimes used. Section 33 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 PS 533, provides that "Words and phrases shall be construed . . . according to their common and approved usage . . ."

In *Lewis's Estate,* 156 Pa. 337, 27 A. 35 (1893) this Court considered the meaning of "earned" as used in the (now repealed) Act of June 3, 1887, P. L. 332, providing that "property of every kind owned, acquired or earned by a woman, before or during her marriage, shall belong to her and not to her husband." The ques-

tion arose on a married woman's claim for services rendered to a boarder. The court below rejected her claim on the ground that her services were not rendered in the course "of a regular business or trade of nursing." We reversed, saying: "Worcester defines the verb 'earn' thus: 'to gain, get, obtain, or acquire as the reward of labor or performance of some service' ".

In the cases in which this ordinance was considered on appeal, it was held that the tax was on earned, as distinguished from unearned income: *Penna. Co. etc. v. Phila. et al.*, 346 Pa. 406, 31 A. 2d 137 (1943); *Dole v. Phila. et al.*, 337 Pa. 375, 11 A. 2d 163 (1940); *Ross v. Phila. et al.*, 149 Pa. Superior Ct. 33, 25 A. 2d 834 (1942). For purposes of taxation, the City had the power to classify income into the two classes, (a) earned incomes and (b) unearned incomes, and to tax one class and not the other. On this point, Mr. Justice ALLEN M. STEARNE said in *Pennsylvania Co. etc. v. Phila. et al.*, 346 Pa. 406, 415-16, 31 A 2d 137 (1943), "As it represents a bona fide and reasonable attempt to make an administrative classification of operations as taxable and nontaxable, depending upon whether the taxpayer is engaged in performing services and actively managing property in the conduct of business thereon, or whether he is merely receiving unearned income from the passive ownership of property, it is in harmony with Section 1 of Article IX of the Constitution requiring that taxes shall be uniform upon the same class of subjects."

Almost the whole of the City's brief is devoted to the contention that the income from plaintiff's real estate and mortgage transactions (described in findings 11 to 23 quoted above) is taxable "in view of the decision of this court in Pennsylvania Co. v. Phila. [supra]." At page 17 of the brief, its contention is: "Hence, the test is not whether the net profits are 'earned' or 'unearned,' but rather whether the net profits

are derived from an undertaking of any nature, either conducted for profit or ordinarily conducted for profit. To that extent the net profits are limited by the Ordinance and in no other respect, regardless of what language was used heretofore in any of the briefs of arguments." We must reject these contentions. It clearly appears, both in the title to the ordinance and in section 2, that the tax is on "(c) the net profits *earned* after January 1, 1939, of businesses, professions or other activities conducted by such residents . . ." The City's definition of "business"[4] has been quoted from the ordinance and expressly includes both words "profession" and "activity." The application of the rule *ejusdem generis* to the context "businesses, professions, or other activities" restricts the meaning that may be given to the word "activities" by limiting it to what is included in the words "businesses and professions." And this accords with section 33 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS 533, providing: "General words shall be construed to take their meanings and be restricted by preceding particular words . . ." The ordinance makes a distinction between net profits earned, as taxable income, and net profits not taxable because not gain resulting from professional or business activity as defined in the ordinance. The use of the words "operation" and "net gain" seem clearly to refer to a taxable's active conduct of a money-making occupation and not to the kind of acts done by one not engaged in business but merely conserving his property.

Courts must presume that city council intended to pass an ordinance within its legislative power and that the City did not intend to levy a tax which it had no authority to impose. Its power to tax, as was stated earlier in this opinion, was conferred by the Sterling

---

[4] See generally the remarks of STEWART, J., in *Marsh v. Groner*, 258 Pa. 473, 478, 102 A. 127 (1917).

Act which expressly denies municipal power to tax any "privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee . . ." Among the state taxes then in effect were the capital stock tax collected from corporations, the four mills State tax on securities[5] and the corporate loans tax[6] on securities. In *Commonwealth v. Standard Oil Co.,* 101 Pa. 119, 145 (1882), it was decided that the capital stock tax was a tax on the property and assets of the corporation; see also *Lawrence Township School District Tax Case,* 362 Pa. 377, 381, 67 A. 2d 372 (1949). In *Commonwealth v. Lehigh Valley R. R. Co.,* 104 Pa. 89, 99 (1883) it was held that this tax was a tax on the securities in the hands of the holders. In *Kelly et al. v. Kalodner et al.,* 320 Pa. 180, 181 A. 598 (1935) in considering the income tax Act of July 12, 1935, P. L. 970, we held that "attempts to levy a tax upon the income from real estate or from stocks, bonds and similar securities in the hands of the owner thereof, it is a property tax and subject to the constitutional requirement of uniformity." While deliberating on the enactment of the proposed ordinance in 1939, city council knew, or was advised that it had no power to tax the income from securities then taxed by the State, and for that reason, by the terms of the ordinance, sought to distinguish earnings for services rendered and net profits from engaging in business, professions or other activities, from *unearned* income such as resulted in this and in *Murray et ux. v. Philadelphia et al.,* 363 Pa. 524, 70 A. 2d 640.

The injunction does not restrain the City from collecting the tax on plaintiff's net income from his pro-

---

[5] See State Personal Property Tax Acts, Act of June 22, 1935, P. L. 414, section 1; reënacted as amended by Acts of May 18, 1937, P. L. 633, section 1; May 5, 1939, P. L. 76, section 1; July 11, 1941, P. L. 361, section 1, 72 PS 3242 et seq.

[6] Act of June 22, 1935, P. L. 414, section 17, as amended and reënacted, 72 PS 3250-10.

fession as attorney at law. The restraint is against the City's attempted collection of a tax on income or profits realized in plaintiff's transactions in real estate and in shares of corporate stocks during the period from 1939 to 1947, as described in the findings of fact, numbered 11 to 27, quoted above.

In *McCoach, Collector of Internal Revenue v. Minehill & Schuylkill Haven R. R. Co.*, 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842 (1913), it was held that a lessor corporation by receiving rent from its lessee and dividends from investments was not doing business within the meaning of the Corporation Tax Act. In *People ex rel. Nauss et al. v. Graves et al.*, 283 N. Y. 383, 28 N. E. 2d 881 (1940), it was decided that tenants in common of nine parcels of inherited land held for income purposes, who received the income from the real estate agent who operated the properties for annual compensation, were not engaged in business within a taxing statute. The court said, "It is clear that appellants are not engaged in a trade or occupation, and respondents do not argue to the contrary. Appellants are subject to the tax, therefore, only if their activities as tenants in common constitute the doing of business. The term 'business' is of very broad significance and has a great variety of meanings. (Murray, English Dictionary on Historical Principles [1888], vol. 1, part 2, p. 1205; 3 Encycl. of the Social Sciences, pp. 80-86; 5 Words and Phrases [perm. ed.], 970; 13 id. 126, 184.) The precise meaning depends upon the context. In the case at bar the word 'business' must be construed as part of the phrase 'trade, business or occupation.' Although business is not thereby rendered the equivalent of trade or occupation, the several words of the series do establish the context; and the context determines which of the several meanings was intended by the Legislature. (People ex rel. Parker Mills v. Comrs. of Taxes, 23 N. Y. 242, 244.) When used in tax statutes

524

similar to that involved in the case at bar, 'business' or 'doing business' connote something more than the ownership of property and the receipt of income derived from property." (citing cases) See also *Higgins v. Com'r of Internal Revenue*, 312 U. S. 212, 61 S. Ct. 475, 85 L. Ed. 783 (1941); *Burrell et al. v. Lynch et al.*, 274 App. Div. 347, 84 N. Y. S. 2d 171 (1948).

We agree with the court below that these profits are not within the meaning of the term "earned" as used in the ordinance.

Decree affirmed, costs to be paid by the appellant.