The facts are stated in the opinion, by HARGEST, P. J., of the court below as follows:
This is an appeal by the defendant from the settlement for Corporate Net Income Tax for the calendar year 1936 in the sum of $913.68, upon which interest was subsequently settled amounting to $157.40, making a total of $1,071.08, which amount was paid under protest.
Briefly, the contentions are (1) whether the Act of April 8, 1937, P. L. 227, amending and re-enacting the Act of May 16, 1935, P. L. 208, applies to the income for the year 1936, and (2) whether the defendant and its parent corporation had a right to file a consolidated return.
 FACTS
We have answered the requests for findings of fact and filed the same of record. We repeat so much of them as is necessary to this discussion. *Page 375 
1. The defendant is a domestic corporation subject to the Corporate Net Income Tax Act, and during the year 1936 the Buck Run Coal Company, also a domestic corporation subject to said Act, owned or controlled a majority of the voting capital stock of the defendant.
2. On March 4, 1937, the Buck Run Coal Company made application to the Department of Revenue for permission to file a consolidated report for both companies for the calendar year 1936, which application was refused March 9, 1937.
3. On April 9, 1937, the Buck Run Company, on behalf of itself and the defendant, submitted a report showing the combined net income and that there was a net consolidated loss of the parent and subsidiary company of $211,638.72 for the year 1936. Attached to the consolidated report there was submitted, without prejudice, reports on a separate basis by each company.
4. On February 25, 1936, the Department of Revenue issued a regulation with reference to the consolidated reports providing that only corporations subject to the Pennsylvania Corporate Net Income Tax Act which make consolidated reports to the Federal Government, under Section 141 of the Revenue Act of 1934, could make consolidated reports to the Pennsylvania Department of Revenue.
5. In the Corporate Net Income Tax Report which the defendant filed with the Department of Revenue on a separate basis on April 9, 1937, it reported its net income as reported to the Federal Government for the year 1936.
6. On February 1, 1940, the Department of Revenue settled, and on February 19, 1940, the Department of the Auditor General approved, an account against the defendant for the year 1936 in the amount of $913.68, based on the report of net income which the defendant filed on April 9, 1937, on a separate basis, and later an account for $157.40 for interest was also settled. Both amounts were paid under protest. *Page 376 
7. In the report filed by the Buck Run Company on a separate basis April 9, 1937, it showed a loss as reported to the Federal Government for the calendar year 1936, and on December 5, 1938, the Department of Revenue settled, and on December 30, 1938, the Department of the Auditor General approved, an account in which no tax was charged against that company. No petition for resettlement or review was filed as to this settlement.
8. Had a settlement been made upon the report filed upon a consolidated basis, no tax would have been due from the Repplier Company.
9. The Department of Revenue did not, prior to April 15, 1937, prescribe or prepare a form upon which either the defendant or the parent company could make either an application for filing a report or a report on a consolidated basis showing the combined net income of the defendant and its parent company.
10. On January 15, 1938, and on January 31, 1938, the Department of Revenue issued regulations and instructions interpreting the Act of 1935, as amended by the Act of April 8, 1937, relating to the filing of consolidated reports, which provided that the right to file consolidated returns, under the decision of the Supreme Court (National Transit Co. v.Boardman, 328 Pa. 450), could "apply only to settlements for the Calendar Year 1935 and for Fiscal Years beginning in 1935" and "are governed by the amendment of 1937 which fixes the additional requirement that consolidated reports may be filed only by those corporations filing on a consolidated basis with the Federal Government." These regulations did not revoke the regulation referred to in Finding No. 4 above.
11. The Federal Net Income and Excess Profits Tax Report for the year 1936 was due and filed with the Federal Government on March 15, 1937.
12. Corporations which could file net income reports with the Federal Government on a consolidated basis in 1936 were defined in Section 141 of the Federal Revenue *Page 377 
Act of 1934, as amended, to be corporations which were common carriers by railroad or their related holding or leasing corporations. Neither the Buck Run Company nor the defendant was so engaged during the year 1936.
13. From May 16, 1935, to the time of the trial in this case, the evidence shows it has been the practice of the Department of State of the Commonwealth to require corporations to file in that Department certificates issued by the Department of Revenue as a condition precedent in each of the following cases:
(a) To the issuing of letters patent to a corporation in the case of merger or consolidation of corporations; (b) to the issuance by the Department of State of a certificate of dissolution; and (c) to the cancellation of the certificate of authority of a foreign corporation and issuance of a certificate of withdrawal. There must be filed in each case a certificate of the Department of Revenue setting forth that all reports required by that Department have been filed to the date of the proposed merger, dissolution or withdrawal, as the case may be, and that all taxes, bonus, fees, and charges required by law have been paid up to and including said date.
14. From May 16, 1935, to the time of the trial of this case, it has been the practice of the Department of Revenue to require, as a condition precedent to the issuance of the certificates mentioned in the preceding finding, that (a) each corporation which goes out of existence as the result of a merger, consolidation or dissolution, and (b) each foreign corporation which desires to have its certificate of authority cancelled, and a certificate of withdrawal, shall file a report showing the corporate net income received up to the date of merger, consolidation, dissolution or withdrawal, as the case may be, and pay to the Commonwealth the tax shown by such report to be due by reason of the receipt of such income.
15. The administrative practices above referred to in the two preceding findings were followed and applied in all cases of merger, consolidation, dissolution and withdrawal *Page 378 
which occurred between May 16, 1935, and the end of 1936, and between December 31, 1936, and April 15, 1937, and there were a number of such cases during each period.
16. The corporate net income tax of every corporation which entered into a merger or consolidation, or which dissolved or withdrew from the Commonwealth, between January 1, 1936, and April 15, 1937, was computed according to the provisions of the Act of May 16, 1935, P. L. 208, as amended by the Act of August 7, 1936, P. L. 127. The provisions of the Act of April 8, 1937, P. L. 227, were not applied to such settlements, nor were they applied in any case to the settlement of corporate net income taxes for the year 1935.
 ACTS OF ASSEMBLY
This Act is known as the Corporate Net Income Tax Act.
The re-enactment of 1937 provides "That the title and all the sections of the act" (of 1935) as amended, "are hereby re-enacted, amended or further amended, as the case may be."
The Act provides for "an excise tax, for a limited period of time, on the net incomes of certain corporations."
Section 3 of the Act of 1935 provided, in part:
"Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, a State excise tax at the rate of six per centum per annum upon each dollar of net income of such corporation received by, and accruring to, such corporation during the calendar year one thousand nine hundred thirty-five, . . . a similar tax at the rate of ten per centum per annum upon each dollar of the net income of such corporation during the calendar year one thousand nine hundred thirty-six . . ."
Section 3 of the Act of 1937 provides for a tax of seven per cent. for the calendar years of 1937 and 1938, *Page 379 
and for the payment upon the basis of a fiscal year where the corporation reports to the Federal Government on that basis.
Section 4 requires each corporation liable to tax to report prior to April 15 on a form prescribed of each of the years 1936, 1937, 1938 and 1939 the amount of net income, and pay one half of the tax when making the report and the balance in thirty days thereafter.
Section 5 provides:
"The department (shall) may, upon application made to it, in such form as it shall prescribe, permit any corporation owning or controlling, directly or indirectly, a majority of the voting capital stock of another corporation or of other corporations, subject to the provisions of this act, to make a consolidated report, showing the combined net income: Provided,That consolidated reports may be made only by corporationsmaking consolidated returns to the Federal Government."
Section 13 provides:
"This act shall become effective immediately upon its final enactment, and shall remain in force, only for the imposition and collection of taxes on net income of corporations for thefour calendar years one thousand nine hundred thirty-five, one thousand nine hundred thirty-six, one thousand nine hundred thirty-seven, and one thousand nine hundred thirty-eight . . ."
The amending Act of August 7, 1936, P. L. 127, made two changes: (1) that dividends received from another corporation should not be included in net income, and (2) increased the rate of taxation from six to ten per cent. These changes are not involved in this case.
The re-enacting and amending Act of April 8, 1937, made a number of changes, only two of which are involved in this case: (1) it required dividends and interest which had not theretofore been included to be included for taxation in the third allocation fraction, and (2) it limited the right to file consolidated reports to those corporations which were permitted to file such *Page 380 
reports with the Federal Government, that is, — to common carriers by railroad.
 QUESTIONS INVOLVED
The matter before us is the proper interpretation of the Act of 1937. This is divided into two principal questions:
1. Whether the Act applies to the computation of taxes for the calendar year 1936.
2. Whether it takes away the right given by the Act of 1935 of the Buck Run Company, the parent, and the Repplier Company, the subsidiary, to file consolidated reports for the calendar year 1936.
1. The question as to whether the Act of 1937 applies to the corporate net income for the calendar year 1936 involves two subordinate questions: (A) whether the Act is retrospective in its operation, and (B) whether the Act imposes a "spot" tax or an "accruing" tax.
In approaching these questions, it must be remembered that this is a taxing statute which must be strictly construed. We are not dealing with exemptions, as the Commonwealth has suggested, but with the essential right to the tax. Any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. Commonwealth v. Chester County Light Power Co., 48 Dauph. 1, 5; Commonwealth v. Quaker City CabCo., 29 Dauph. 90, 287 Pa. 161, 277 U.S. 389; Commonwealth v.Philadelphia Rapid Transit Co., 287 Pa. 190, 196; GilbertonBorough School District v. Morris, 290 Pa. 7; Krause's Est.,325 Pa. 479; Arbuckle's Est., 324 Pa. 501; Barber's Est.,304 Pa. 235, 240. The words imposing the tax should be clear and unambiguous (Commonwealth v. P. W. P. Co., 271 Pa. 456,458); nor can words be extended by implication. Gould v. Gould,245 U.S. 151, 153; United States v. Merriam, 263 U.S. 179, 188;Commonwealth v. Philadelphia Rapid Transit Co., supra. *Page 381 
(A) It is well settled that a statute will not be construed as retrospective unless there is a clear legislative intention that it is to have that effect. While there is no constitutional inhibition against a statute having a retrospective operation (Welch v. Henry, 305 U.S. 134), both the statute law and the courts are emphatic that it shall not have such operation unless the intention clearly and manifestly appears.
The Statutory Construction Act of May 28, 1937, P. L. 1019, Sec. 56, provides:
"No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature."
In Farmers National Bank Trust Co. v. Berks County RealEstate Co., 333 Pa. 390, 393, the Court said:
"The general rule of construction is that statutes . . . must be construed prospectively except where the legislative intent that they shall act retrospectively is so clear as to preclude all questions as to the intention of the legislature."Commonwealth v. Chester County Light Power Co., supra;Wettengel v. Robinson, 300 Pa. 355.
Notwithstanding the Commonwealth has expended some energy and used some paper in its 82-page brief to the constitutionality of the proviso in Section 5 of the Act of 1937, that question does not arise. There is no question concerning the classification made by the proviso in Section 5 of the Act. We assume the classification to be valid. Commonwealth v. GirardLife Insurance Co., 305 Pa. 558, 287 U.S. 570; Turco Paint Varnish Co. v. Kalodner, 320 Pa. 421. Nor does any question arise concerning the right to apportion taxes, which right has been repeatedly sustained. Commonwealth v. Mortgage Trust Co.,227 Pa. 163. We base our decision wholly upon the interpretation of the statute.
The Act of 1937 provides that it shall take effect immediately. There is no single sentence in it which indicates any retroactive effect, and such legislative intention must be drawn, if drawable at all, from the whole Act. *Page 382 
This is not a new statute. The legislature has expressly said "that the title and all the sections of the act (of 1935) are hereby re-enacted, amended or further amended."
A cardinal principle of statutory construction, which has found expression in Art. VI, Sec. 81, of our Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS Sec. 581, is:
"Whenever a law reenacts a former law, the provisions commonto both laws shall date from their first adoption. Such provisions only of the former law as are omitted from the reenactment shall be deemed abrogated, and only the new orchanged provisions shall be deemed to be law from the effectivedate of the reenactment." (Underscoring [Italics] ours.)
In Art. V, Sec. 73, 46 PS Sec. 573, which relates to amendments, the Act provides:
"But the portions of the law which were not altered by theamendment shall be construed as effective from the time oftheir original enactment, and the new provisions shall beconstrued as effective only from the date when the amendmentbecame effective." (Underscoring [Italics] ours.)
Section 3 of the Act of 1937 re-enacting the language of the Act of 1935, as amended in 1936, provides that every corporation shall be subject to pay for the privilege of doing business on the net income received and accruing to it during the calendar year 1935 and the calendar year 1936.
In Section 4 it requires the corporation to transmit a report before the 15th day of April 1936 and 1937, including a true copy of its return to the Federal Government for the calendar or fiscal year.
In each of these Sections the years 1935 and 1936 are specifically mentioned. Applying the statutory construction just above referred to, when the legislature reenacted the Acts of 1935 and 1936 it was not speaking as of April 8, 1937, the date of the new enactment, but *Page 383 
as of May 16, 1935, and August 7, 1936, the dates of the original enactment and first amendment.
If this were a new Act and mention of the years 1935 and 1936was made for the first time in this Act, the argument that the Act is retroactive would have weight.
If the statute be retroactive, it would require the defendant to include both dividends and interest in the numerator of the third allocation fraction which were not required to be included by the Act of 1935 and the Amendment in 1936, and it would deprive the defendant and its parent company from filing a consolidated report, because the proviso of Section 5 of the 1937 Act limits that right, for the first time, to common carriers reporting as such to the Federal Government.
The Commonwealth's position is double barrelled. It contends that the statute is prospective in that it fixes April 15, 1937, as the date upon which the tax is ascertainable and due, and that the Act provides for what may be called a "spot" tax determinable on that date, but even if the Act does not impose a "spot" tax it was the intention of the legislature that it should be retroactive.
Section 3 of the Act imposes the tax "upon each dollar of net income of such corporation received by and accruing to, suchcorporation during the calendar year."
This statute provides that it became effective immediately. Under our legislative system, all Acts become effective on September 30th after their approval, unless it is otherwise designated in the Act, and the legislature well knew how to provide that statutes shall act retrospectively or prospectively.
The Act of May 16, 1935, P. L. 184, approved the same day as the Act of 1935 in question, provided that "The provisions of this act shall be retroactive to the first day of January, one thousand nine hundred thirty-five." The Act of July 28, 1936, P. L. 76, provided that the Act should become effective immediately and apply to the year ending December 31, 1936. The Act of February 2, 1937, P. L. 3, provided that the amendments to *Page 384 
certain Sections "shall first apply to taxes and bonus settled for the calendar year one thousand nine hundred and thirty-six." The Act of July 10, 1941, P. L. 358, provides that the provisions of the Act "shall operate prospectively and retroactively." The Act of July 11, 1941, P. L. 361, which re-enacted and amended the State Personal Property Tax Act, provided: "The exemption extended by this re-enacting and amending act * * * is hereby made retroactive" for the years 1935, 1936, 1937, 1938, 1939, and 1940. See also the Acts of June 6, 1939, P. L. 261; of June 19, 1939, P. L. 413; of June 24, 1939, P. L. 660.
As to the legislature stating in terms when the Act shall take effect prospectively, examples are found in the Acts of August 6, 1936, P. L. 92; April 8, 1937, P. L. 220; July 29, 1941, P. L. 548.
We find nothing in the language of the Act which indicates any intention that it should have a retrospective operation, unless it be that it changes the tax to a "spot" tax, and therefore operates to tax the income for the year 1936.
(B) Does the Act provide for a "spot" tax?
We adopt the definition of "spot" taxes contained in the brief of defendant:
" 'Spot taxes' are those which are imposed, levied or assessed upon persons or property depending upon their residence, status, situs, ownership, value, etc., as of aparticular day in the year."
The Act of May 5, 1939, P. L. 56, is an example. It provides that the Department of Revenue shall "fix a day as of which the property, made taxable by the third section of this Act, shall be listed and returned. The day, so fixed, shall be between the first and fifteenth days of the month of January, both inclusive, and the day so fixed, shall be printed or stamped on the forms for making returns of all such property." Section 4 of that Act fixes a "report date", and provides that the report shall contain a sworn statement of the *Page 385 
value of the property "held, owned or possessed by such resident, as of the date fixed annually in the manner provided in section five of this act." Section 3 of the Act provides that all property of the classes enumerated "is hereby made taxable, . . . as of a date to be fixed annually, in the manner provided in section five of this act." But there is no similar language in the Act of 1937.
A "spot" tax is entirely different from what may be called an "accruing" tax. Again, we adopt the definition submitted in the brief of defendant:
" 'Accruing taxes' are taxes for which a liability arises at the beginning of the tax period and continues throughout the period and afterward, until a report is made, the tax paid and the liability discharged. The amount of the liability may not be susceptible of computation until the end of the tax period, for the amount may be affected by the transactions which take place from day to day. But the liability exists and it becomes complete when the tax period ends, even though it may be a matter of several months before the necessary report is required to be filed and before payment is required to be made."
Illustrations of accruing taxes are the tax on capital stock of domestic corporations and tax on gross receipts. In capital stock and gross receipts taxes the liability arises on the first day of the tax period and continues to the end of it, but the amount may be affected by many things occurring during the period. Until the tax period is closed it is not possible to compute the tax, but the liability for it exists. In the case of a merger, consolidation or dissolution, a report is required as of the date of such event, and the tax is based on what has accrued up to that date.
The statute in question imposes the tax upon the corporation for "each dollar of net income of such corporation received by, and accruing to, such corporation during the calendar year." The words "accruing to *Page 386 
. . . during the calendar year" show a clear intent to impose a liability as the income accrues from day to day during the period. This has none of the incidents of a "spot tax". The taxable period is the taxable year (where a fiscal year is not involved). The tax date, if such term need be applied, is the last day of the period, when the liability became fixed, although not immediately ascertainable. In the instant case that date was December 31, 1936. The fact that the "report date" may be fixed subsequently, or may be indefinite as it is in this statute, (because Section 4 provides for a report "on or before the fifteenth day of April",) does not affect the liability for the tax; nor can the "due date", which is the date upon which the tax must be paid, affect the liability.
Moreover, there is a good reason why it may be feasible to fix a "spot tax" as of a certain date on property, such as capital stock, and not on a tax for a privilege of doing business, which cannot be readily ascertained or measured as of a certain day, but must have the whole period taken into consideration.
The Statutory Construction Act of May 28, 1937, P. L. 1019, in Art. IV, Sec. 52, 46 PS Sec. 552, provides:
"In ascertaining the intention of the legislature in the enactment of a law, the courts may be guided by the following presumptions among others:
"(1) That the legislature does not intend a result that is absurd, impossible of execution or unreasonable."
If this Act be construed as the Commonwealth contended it should be construed in the case of Commonwealth v. CurtisPublishing Co., 50 Dauph. 99, and as this Court there determined, it would lead to rather absurd results.
In the Curtis case the Commonwealth asked the Court to conclude that April 15, 1937, was the date on which liability "first arises". In this case it asks that such date be considered as the date when liability or the taxable status of defendant is "finally perfected" *Page 387 
or "finally determined". This is shown by a comparison of corresponding requests for conclusions of law as follows:Curtis case Request No. 8, this case Request No. 20; Curtis
case No. 9, this case No. 21.
The 10th request in the Curtis case was that "no liability for 1936 corporate net income tax accrued or attached until April 15, 1937."
The 17th request of the Curtis case was that "defendant'sliability for corporate net income tax for the calendar year 1936 did not arise until April 15, 1937." The corresponding request in the instant case is that the liability under the statute "remains abstract and indeterminable until the due date thereof, April 15, . . . Therefore, while this defendant was subject to the Corporate Net Income Tax Act all during the period during which it did business, this liability did not ripen into a specific fixed determinable sum until the 'tax date' when the tax was finally due and assessable, April 15."
There can be no question that the Commonwealth has shifted its position. In the brief in the Curtis case it argued:
"No liability accrues or attaches on taxpayer during the period in which the measure of the tax, net income, is received or accrued . . ." (p. 10).
"Liability of the defendant for its 1936 corporate net income tax did not attach until April 15, 1937 . . ." (p. 17).
"As this Court will recall from our discussion of the significance of the 'tax date', April 15, 1937, was the first time that liability for 1936 net income tax attached to defendant . . ." (p. 17).
"As the Court will recall, the Commonwealth based its argument on the importance of recognizing the distinction between the 'taxable year' and the 'tax date'. Briefly, the Commonwealth contended that inasmuch as the 'tax date', or the date as of which the defendant's liability first arose, was subsequent to the effective date of the Act of 1937, P. L. 227 . . ." (p. 25). *Page 388 
The Commonwealth's shifting of its position indicates both the fallacy of its position and the error into which this Court fell in the Curtis case. After most careful consideration, for the reasons given in this opinion and in the opinion filed this day passing upon the exceptions filed in that case, we are impelled to overrule it.
The effect of that case was that no liability was fixed until April 15th. That necessarily leads to the logical conclusion that notwithstanding the Act was passed April 8, 1937, it, being prospective, fixed a date seven days later upon which the liability for the 1936 tax first arose. If liability for 1936 taxes "first arose" on April 15, 1937, then no tax whatever should have been imposed on any corporations which dissolved, merged, consolidated or withdrew during the calendar year of 1936, or prior to April 15, 1937. Such construction would lead to an absurdity which the legislature could not have intended.
There were many of such consolidations, mergers and withdrawals, and many corporations had made reports and paid the tax, but the settlements were not made before the Act was passed. To put such a construction upon the statute would come dangerously near to declaring it unconstitutional for lack of uniformity.
As we said in Commonwealth v. Brinks, Inc.,52 Dauph. 289, 298:
"It is fundamental that a settlement against one corporation is lacking in uniformity and invalid if other corporations of the same class are not taxed."
And as said in Commonwealth v. A. Overholt Co., Inc.,331 Pa. 182, 191:
"Uniformity of taxation means equality of tax burden. A tax to be uniform must operate alike on the classes of things or property subject to it."
Therefore such a construction which endangers the statute must be avoided.
Evidence as to administrative practices — The evidence offered by the defendant as to the administrative *Page 389 
practices was objected to by the Commonwealth on the ground that it was not admissible under Section 1104 of the Fiscal Code of April 9, 1929, P. L. 343, 72 PS Sec. 1104, which provides that on hearings before the Court "no facts shall be admitted in evidence that were not brought to the attention of the department making the settlement in the affidavit accompanying the appeal."
We have considered the purpose of this statute inCommonwealth v. Union Trust Co., 50 Dauph. 266, 271-276, affirmed by the Supreme Court, 345 Pa. 298, 27 A.2d 15, and in Commonwealth v. Ford Motor Co., 51 Dauph. 151-156.
As said in the first case cited, page 275:
"One purpose is to give fair notice to the opponent of what will confront him at the time of trial and something of the nature and setting of these propositions, so as to avoid unfair surprises and so that he may have reasonable opportunity to meet these propositions."
To prove the administrative practices of the Commonwealth itself can certainly be no surprise to the Commonwealth and the admission of evidence of what the Commonwealth itself does could not be considered as any unfair advantage to the Commonwealth. The word "facts" contained in the statute refers to such facts as tend to affirmatively support the defendant's case, and of which the Commonwealth would, in all probability, have no knowledge in advance of the settlement or trial, unless they were brought to the attention in the ways pointed out by the statute. For this reason, the objection to the admission of this evidence is overruled.
The evidence in this case shows that the administrative construction of the Act was to settle the tax for portions of the year 1936 in the case of mergers, consolidations, dissolutions or withdrawals, which we think was consistent with the legislative intention. The liability for the tax began to accrue on January 1, 1936, when the income began to accrue, and that liability continued to accrue until the date of such dissolution, merger, *Page 390 
consolidation or withdrawal, because the corporation was exercising the privilege of doing business up to that date. At that time the exercise of the privilege ended and the tax liability was then fixed, although not then ascertained. Every such corporation was taxed for the time it exercised the privilege. There was no apportionment of the tax necessary, but a simple finding of the amount of income received during the period in which the privilege was exercised.
Referring again to the 23rd request for conclusions of law in the instant case, we are asked to say:
"There exists a liability for tax upon the doing of business, which liability remains abstract and indeterminable until the due date thereof, April 15, which is the time selected by the State as of which the tax liability is finally determined under the provisions of the aforesaid act. Therefore . . . this liability did not ripen into a specific fixed determinable sum until the 'tax date' when the tax was finally due and assessable, April 15."
This is a rather involved conception in an effort to make the statute operate both prospectively and retrospectively. Whatever is meant by the liability remaining "abstract and indeterminable" until the liability "ripens" into a specific, fixed and determinable sum, the request indicates that the Commonwealth now concedes a liability which accrued before the passage of the Act, and therefore the Act is retrospective in its operation, but because the liability cannot be determined until a report is filed, the liability remains"abstract" until "finally perfected" at a prospective date. This is a rather confusing attempt to apply simple rules of statutory construction. The simplicity is apparent when under those rules it is manifest that the liability for 1936 taxes attached under the Act of 1935, as amended in 1936, and not under the re-enactment of 1937.
The terms "taxable year" and "tax date" are not found in the statute. They seem to have been taken from the case ofOleson v. Borthwick, 33 Haw. 766, upon which *Page 391 
the Commonwealth most strongly relied in the Curtis case. For many years corporations have been required to pay capital stock, loans and other taxes. They were required to file annual reports. No taxes were due until sixty days after a settlement was made, which might be months or years.
According to the Commonwealth's present argument, under this situation there was a different "tax date" for every corporation, because the tax date was sixty days after the settlement, and the tax liability remained "abstract" as to each corporation until the tax against the particular corporation was finally perfected by a settlement.
Under the Act of 1937, as under other tax laws, there was anabsolute, not an abstract, liability for whatever amount was subsequently ascertained by settlement.
The Commonwealth contends that because in Section 13 of the Act of 1937 it is provided in terms that the Act shall take effect immediately and remain in force "for the imposition and collection of taxes . . ." for 1935, 1936, 1937, 1938, that this evidences a specific intention to make the Act retroactive. But, again, we recur to the principles of legislative construction that as to the year 1936 it is simply a re-enactment of the Acts of 1935 and 1936. The tax for 1936 was imposed under those statutes, and not by the Act of 1937 retrospectively.
In addition to the Curtis case and the cases referred to in that opinion, the Commonwealth relies heavily upon the caseDiamond Match Co. v. State Tax Commission, (Md.), 200 A. 365
(1938), but that case does not support the Commonwealth's contention.
The Diamond Match Company, a domestic corporation, was in existence on January 1, 1936, subject to the ordinary franchise tax for the year 1936, which amounted to $900. It was dissolved March 31, 1936. On April 4, 1936, the legislature passed an Act which imposed an additional special franchise tax on "every domestic corporation having capital stock and doing *Page 392 
business in this State on the first day of January 1936." And on June 30, 1936, the tax under the last Act was assessed against the company in the amount of $1,800.
One of the questions raised was that the Act was retroactive, and therefore violated the due process clauses in the Maryland and Federal Constitutions. There was little room for controversy over the first question. The statute, in terms, was retroactive upon all corporations in business on January 1, 1936, and the company came within that category. Moreover, it was passed during the year 1936, whereas if our Act is to be made retroactive it would relate back not to January 1, 1937, but to January 1, 1936, in order to include all the income received by, and accruing to, corporations during that year.
In discussing the positive language of the Act which provided that it should operate on all corporations in business on the first day of January 1936, the Court said, page 367:
"The precise expression of the legislative purpose must be given its effect, if the law be otherwise valid. When thus declared, and at the time specified, the corporation was subject to the tax, the obligation to pay the tax is not extinguished if, after such date of statutory imposition or levy, the corporation should cease to do business in the State, or duly undergo dissolution."
It must be remembered that we are dealing with a taxing statute which is to be strictly construed against the Commonwealth, and, instead of getting into a confusion of thought in order to give the Commonwealth more taxes, if we apply the simple rules of statutory construction we are clearly led to the conclusion that the new portions of the re-enacting Act of 1937 are prospective and not retrospective so as to effect the tax for the calendar year of 1936; that the Act imposed an "accruing" tax and not a "spot" tax; that the tax for which liability accrued throughout the year 1936 was under the Act of 1935 and the Amendment of 1936, and became fixed on December 31, 1936. *Page 393 
For these reasons we conclude that the new provisions of the re-enacting Act do not apply to the settlement of the corporation's net income tax for the year 1936.
2. Does the Act of 1937 take away the right of the Buck Run Company, the parent, and the Repplier Company, the subsidiary, given to them by the Act of 1935, to file a consolidated report for the calendar year 1936?
Section 5, as amended, provides:
"The department (shall) may, upon application made to it in such form as it shall prescribe, permit any corporation owning or controlling, directly or indirectly, a majority of the voting capital stock of another corporation or of other corporations, subject to the provisions of this act, to make a consolidated report, showing the combined net income: Provided,That consolidated reports may be made only by corporationsmaking consolidated returns to the Federal Government."
The amendments are in italic.
Having already determined that the Act of 1937 is not retroactive, the proviso limiting consolidated reports to corporations making such returns to the Federal Government, namely, common carriers by railroads, does not apply to returns for the year 1936 and does not prevent the making of such reports by corporations authorized to make them under the Act of 1935.
But the Commonwealth contends that this defendant does not have the right for other reasons.
We have passed upon this provision of the statute in several cases. In National Transit Co. v. Boardman, 44 Dauph. 38,328 Pa. 450, the National Transit Company, the parent company, endeavored to secure from the department forms upon which to make a consolidated return for itself and its subsidiary. The Department of Revenue failed to furnish any such form. It was contended by the Commonwealth that the word "shall" in Section 5 was permissive and not mandatory, and because the companies involved were not such companies *Page 394 
as were permitted to make consolidated reports to the Federal Government for income tax purposes, the Secretary of Revenue had the right to exclude the plaintiffs from making such returns. This Court and the Supreme Court held that the Act must be strictly construed, was mandatory, and the Secretary of Revenue had no such discretion.
In Commonwealth v. Lukenweld, Inc., 49 Dauph. 14, 49 Dauph. 356, 340 Pa. 401, neither the parent nor the subsidiary company was required to file a consolidated report to the Federal Government, and at the time the reports were due the regulation of the Department of Revenue prevented the filing of consolidated reports by those not filing the same with the Federal Government. Each of the companies filed individual reports. The settlement of the corporate net income tax under the Act in question in this case was made against the defendant, which was the subsidiary company. In that case Judge RICHARDS said:
"No tax was due by the parent company. The appellant would have been required to pay no tax on the consolidated report, and paid the tax settled, under protest."
The situation is in that respect like the situation in the instant case.
Here the settlement was made against the subsidiary, and it has appealed. The Commonwealth contends that the case ofCommonwealth v. The American Sugar Refining Co., 51 Dauph. 314, destroys the effect of the Lukenweld case. We do not agree. In that case the company filed its franchise tax report and paid the sum shown to be due by it. Subsequent to the filing of the report the Commonwealth made a settlement showing no tax due. The appellant corporation, after having filed a petition for resettlement and a petition for review, both of which were refused, appealed, and the Commonwealth contended that because there was no money settlement made against the company it had no *Page 395 
right to appeal, relying upon the expression inCommonwealth v. Lukenweld, but we held that the company was aggrieved, and sustained the appeal. There was no question involving consolidated reports.
The Commonwealth in the instant case contends that only the parent company may assert and exercise the right to file a consolidated report. The provision is that "the department may, upon application made to it, in such form as it shall prescribe, permit" the parent corporation to make "a consolidated report, showing the combined net income." Even if that language should exclude the subsidiary company frommaking an application because the parent company alone can file
the report, in the instant case the parent company did both assert and exercise its right to file a consolidated report. On March 4, 1937, it made application for permission to file such report. The application was refused on March 9, 1937. Nevertheless the parent company did file a consolidated return April 9, 1937.
In the case of National Transit Co. v. Boardman, supra, it was held that Section 5 was mandatory and the department had no right to refuse. The refusal was a nullity.
The Commonwealth contends that this application is, in effect, a right asserted by the subsidiary in behalf of the parent, and therefore this defendant has no right of appeal. In the Lukenweld case the subsidiary appealed and was sustained.
Moreover, on April 9, 1937, both the consolidated report and the separate reports for each company were filed. It was not until December 5, 1938, that a settlement was made against the parent company showing no tax due, and no action was taken on the separate report of the defendant in this case until February 1, 1940, more than a year later. That was the first notice that either the parent or subsidiary company had that the Commonwealth had refused to settle the tax on the consolidated basis. If the settlement of both companies had *Page 396 
been made on the same day, the parent company, in all probability, would have considered itself aggrieved, and appealed.
When the settlement was made against the parent company showing no tax due, there was nothing to indicate the Secretary would not perform his duty to both the parent and the subsidiary. Neither the parent nor the subsidiary was obliged to seek any specific enforcement of its right. The parent had complied with all the conditions precedent to a proper settlement on the consolidated report, and when this settlement was made against the defendant in this case, more than a year after the settlement against the parent company, the Repplier Company, this defendant, was certainly "aggrieved", and had the right to appeal. This is not an appeal to enforce a right of the parent company. It distinctly involves a right of the subsidiary company, which the parent company had claimed for it, and it is certainly a case in which the Repplier Company is defending a claim against itself.
The Commonwealth contends that even if the defendant may have a cause to complain of the denial of the right to file a consolidated report, "However, for other reasons, if the Act of1937, P. L. 227, applied to settlements for the year 1936, theunfettered discretion to allow consolidation cannot bequestioned in this appeal." (Underscoring [italics] ours.)
That is a rather startling claim for the Department of Revenue. Section 5 of the Act, as we have already indicated, changed the word "shall" to "may", and provided that corporations may have the right to make consolidated reports, "Provided, That consolidated reports may be made only by corporations making consolidated returns to the Federal Government." This proviso is the only standard set up in the statute, and to hold, as asserted above, that the Department had "unfettered discretion", would be giving the Department of Revenue the right to refuse any other classes *Page 397 
of corporations the right to make such returns. This would give to the Secretary alone the right to establish classifications, without the slightest intimation of any standards. It would be an unconstitutional power and be in the teeth of the language of the Supreme Court in National Transit Co. v. Boardman,328 Pa. 450, 457, as follows:
"It need perhaps not be said that settled principles prohibiting the delegation of legislative power (seeLocke's Appeal, 72 Pa. 491, 494; O'Neil v. American Fire Ins.Co., 166 Pa. 72, 30 A. 943; Gima v. Hudson Coal Co., 310 Pa. 480,483, et seq., 165 A. 850) prevent the adoption of the Secretary's contention (quoted above from his return to the alternative writ) that the act vests him with absolute power to determine which corporations may file a joint return and which may not."
The case of Hotel Casey Co. v. Ross, 343 Pa. 573, 577, is directly in point. It is there said:
"The position taken is that the legislature delegated to the Board of Finance and Revenue complete and final authority at its discretion to determine what, if any, refunds shall be made to taxpayers, subject only to the condition that the taxes or moneys paid are those 'to which the Commonwealth is not rightfully or equitably entitled.' The full extent of the claim is apparent when stated in another and equivalent form, to wit: The board has jurisdiction to pass upon and determine all claims for refunds where taxes, etc., have been paid to the Commonwealth to which moneys 'the Commonwealth is not rightfully or equitably entitled', but nevertheless the board is clothed with a 'complete' discretion to determine whether the refund shall in fact be made. If such are the powers of the board, not only did the legislature fail to provide any standards, or form, for the guidance of the board, but it specifically authorized the board to act without standards. We cannot imagine a clearer example of illegal delegation of authority. The appellees, apparently anticipating such a conclusion, *Page 398 
urged a reason why the principle was not applicable. They say: 'In granting refunds the Commonwealth is not affecting any person's rights, for there is no right to a refund.' They argue that since it is a mere gratuity to the taxpayer, property rights are not involved and the board has unlimited discretion to determine the persons who may be the recipients of their bounty. Although this argument should fall of its own weight, it is also in clear disregard of Article III, Sec. 7, of our Constitution, which provides: 'The General Assembly shall not pass any local or special law . . . refunding moneys legally paid into the treasury.' Since the legislature itself cannot refund taxes voluntarily paid except by laws of general operation or laws embodying reasonable classifications, it obviously cannot delegate an unlimited discretion to one of its creatures, an administrative body, to do that very thing. It is clear that if this act is to be construed to have the meaning suggested by the appellees, we would be compelled to hold it unconstitutional."
We are of the opinion that there is a complete right in the subsidiary to raise the questions of its right to file a consolidated report; and, having determined that the Proviso 5 of the Act of 1937 does not apply to it for the year 1936, such a consolidated report should have been received and settled. It appears that if that had been done, no tax would be due from this defendant.
We therefore come to the following conclusions of law:
 CONCLUSIONS OF LAW
1. The liability of the defendant for corporate net income tax for the calendar year 1936 should be determined by the provisions of the Act of May 16, 1935, P. L. 208, as amended by the Act of August 7, 1936, P. L. 127, and not by the new provisions found in the re-enacting and amending Act of April 8, 1937, P. L. 227.
2. There is nothing in the provisions of the Act of April 8, 1937, P. L. 227, which shows a legislative intention *Page 399 
to make the new provisions of that Act apply retroactively to the settlement of the corporate net income tax for the calendar year 1936.
3. The corporate net income tax imposed by the Act of May 16, 1935, P. L. 208, as amended by the Act of August 7, 1936, P. L. 127, and as re-enacted and further amended by the Act of April 8, 1937, P. L. 227, is not a "spot tax" for which there was no liability until the last date fixed for the filing of the report but is an "accruing tax" for which the liability accrues during the tax period or the taxable year designated in those Acts.
4. The "taxable period" or "taxable year" under said Acts in the instant case was the calendar year 1936. The "tax date" under said Acts is the last day of the tax period, namely, the 31st day of December 1936, when the last transaction occurred which affected the liability of the defendant for the corporate net income tax for that year, and was the date upon which the liability of the defendant became fixed and was first determinable.
5. Under the said Acts, the tax report of the defendant company for the taxable year 1936 might have been filed any time between December 31, 1936, and April 15, 1937, which latter date is the last day on which the report may be filed, unless an extension of time is granted pursuant to the provisions of Section 6.
6. Under the Act of 1935, as amended by the Act of 1936, one half of the tax was due and payable at the time of making the report, and the other half on May 15th succeeding. Under the provisions of the Act of April 8, 1937, one half of the tax was due and payable upon the date on which the report was made, and the other half within thirty days thereafter. In each case the due date was when the first half of the tax was due and payable.
7. The Repplier Coal Company, the defendant, and the Buck Run Coal Company have the right to file a corporate net income tax report for the calendar year 1936 on a consolidated basis showing combined net income, *Page 400 
and to have the taxes settled upon their combined net income.
8. The Repplier Coal Company, the defendant, and the Buck Run Coal Company suffered a combined net loss for the calendar year 1936, and neither of the two companies was liable to pay any corporate net income tax for that period.
9. The defendant company has the right to raise the question of the illegality of the action of the Department of Revenue in refusing to make a settlement upon a consolidated basis showing the combined net income of the defendant and the Buck Run Coal Company, the parent corporation.
10. To construe the Act of April 8, 1937, so that the new provisions therein are applicable to the computation of the corporate net income tax for the calendar year 1936 would violate the uniformity provision of Art. IX, Sec. 1, of the Constitution of Pennsylvania, and the due process and equal protection provisions of Section 1 of the 14th Amendment to the Constitution of the United States.
11. The settlement appealed from is illegal and void because it violates the uniformity provision of Art. IX, Sec. 1, of the Pennsylvania Constitution, and the due process and equal protection provisions of Section 1 of the 14th Amendment to the Constitution of the United States.
12. The defendant, having paid into the treasury the full amount of the tax settled against it, with interest, judgment should be entered in its favor, and the Department of Revenue be directed to enter a credit on its books in favor of the defendant for the sum of $1,071.08.
Commonwealth appealed.
The judgment of the court below is affirmed on the able and comprehensive opinion of President Judge HARGEST.