## Ulmer v. Honesdale Union School District

*A. Emerson Howell*, for plaintiff.
*Lester R. Male*, for defendant.

BODIE, P. J., July 28, 1944.—This case comes before the court on a case stated. Plaintiff issued a summons in assumpsit to the above number and term and service was made upon a representative of the Honesdale School District, the defendant. No statement of claim was filed but the matter was brought before the court for decision on an agreed statement of facts, as follows:

"1. David C. Ulmer, plaintiff, was employed as a teacher by the Honesdale Union School District on April 8, 1940, at a salary of $1,700 per year, and for a sufficient period of time prior to that date to entitle him to a sabbatical leave under the Pennsylvania School Code.

"2. On April 8, 1940, Mr. Ulmer addressed a request to the members of the Board of Education of the Union School District of Honesdale for a sabbatical leave from the school year 1940-41 'in accordance with the provisions set forth in the Pennsylvania School Code'.

"3. On April 8, 1940, the school board released plaintiff on sabbatical leave according to the Pennsylvania School Code.

"4. On June 10, 1940, a schedule of compensation for teachers employed because of sabbatical leaves was adopted by the Union School District of Honesdale, which provides the following salaries for high school teachers:

"(a) For substitute teachers in the high school department, with five years of successful teaching experience in the public schools, $1,600 per year.

"(b) For substitute teachers in the high school department, with no previous teaching experience in the public schools, $1,200 per year.

"(c) For substitute teachers in the entire school system, with successful teaching experience in public schools from one to four years, the annual increments in third class school districts established by the Edmond's Salary shall apply.

"5. On August 5, 1940, one Margaret Baker was elected to fill the position vacant for one year due to the sabbatical leave of David C. Ulmer, at a salary of $1,600.

"6. The compensation paid a substitute prior to the establishment of the salary schedule adopted June 10, 1940, was $5 per day. This compensation was, however, for substitutes hired only for brief periods during the illness of a regular teacher, the school district, prior to April 8, 1940, not having granted a sabbatical leave to any members of its staff.

"7. By stipulation and agreement of counsel it was also agreed that at no time prior to the beginning of

the sabbatical leave which began at the commencement of the school term in September 1940 did the school board and David C. Ulmer discuss the matter of salary or payments of salary to be made during the sabbatical leave."

The facts having been agreed upon by counsel for the respective parties, the questions therefore before the court are solely of law, as follows:

1. Does the schedule of payments as set forth in the sabbatical leave schedule, adopted by the Union School District of Honesdale on June 10, 1940, apply in the case of the sabbatical leave granted David C. Ulmer?

2. If the sabbatical leave schedule adopted June 10, 1940, does not apply, what compensation is David C. Ulmer entitled to during the period of his sabbatical leave?

The law governing the granting of sabbatical leaves is a part of the School Code of May 18, 1911, P. L. 309, as added to and amended by subsequent acts, the latest being the Act of July 28, 1941, P. L. 562, 24 PS §1211. The pertinent parts of the act applicable to the present questions are paragraphs (a) and (d) of section 1216 of the Act of July 1, 1937, P. L. 2579, as amended, which are as follows:

"(a) Whenever any person employed in the public school system of this Commonwealth shall have completed ten years of satisfactory service as a teacher, at least five consecutive years, or less, at the discretion of the board of school directors, of which service shall have been in the school district from which leave of absence is sought, or, in first class school districts, as a member of the instructional staff or department of instruction, as now defined by the local board of education, such person shall be entitled to a leave of absence for restoration of health, study or travel, or, at the discretion of the board of school directors, for other purposes, for a half or full school year, or for two half

school years during a period of two years, at the option of such person. Thereafter, one leave of absence shall be allowed after each seven years of service.

"(d) The person on leave of absence shall receive the difference between his or her regular salary and the salary paid to any substitute employe temporarily engaged because of such leave: Provided, That the employe who is absent on sabbatical leave shall not receive more than one thousand six hundred dollars ($1,600.00), if the employe's absence on sabbatical leave is for a full year, and not more than eight hundred dollars ($800.00) if the employe's absence on sabbatical leave is for a half school year as defined in this act. The salary paid to such substitute shall be the salary for substitute service, according to the salary schedule established by the local board."

The stipulation of facts does not indicate the reason for granting the sabbatical leave. However, a leave for one year was granted to David C. Ulmer by the school board at a meeting held on April 8, 1940, pursuant to the resolution as recorded in the minutes:

"A letter was read from David C. Ulmer, science teacher, asking for a sabbatical leave for the school year 1940-41 in accordance with the provisions set forth in the Pennsylvania School Code.

"On motion of Mrs. Dein and seconded by Mrs. Eno the request of Mr. Ulmer was granted, unanimously carried."

Apparently there had been no discussions between the school board and Mr. Ulmer. The minutes of the school board are as succinct and devoid of cogent facts, as an official war communique. It would seem that both parties were lax in the performance of their respective duties in the request for and the granting of a year's sabbatical leave to one of the important teachers in the high school in that the school board was not informed of the purpose for the leave nor had both parties agreed

on the terms upon which it was to be granted. The only informative statement contained in the quoted board minutes is the fact that the request was granted in accordance with the provisions of the Pennsylvania School Code.

That plaintiff had taught long enough in the Honesdale Union School District to entitle him to a sabbatical leave is not disputed, and we therefore assume that the school board did not abuse their discretion in granting the leave. Thus from the facts set forth we must determine the compensation, if any, to which plaintiff was entitled during his sabbatical leave.

At the time of the granting of the sabbatical leave, April 8, 1940, the only substitute schedule adopted by the Honesdale Union School District provided for $5 per day for substitute teachers who taught for short periods in emergencies when the regular teachers were ill or absent for unavoidable causes. There was no salary schedule at that time for the entire school term. However, on June 10, 1940, before the end of that school term, the board did adopt a "schedule of compensation for teachers employed because of sabbatical leaves". Paragraph (*a*) of the schedule provided that a substitute teacher in the high school department, with five years of successful teaching experience in the public schools, should be paid $1,600 per year. Paragraph (*b*) provided that a substitute teacher in the high school department, with no previous teaching experience, should be paid $1,200 per year.

On August 5, 1940, Margaret Baker was appointed for one year by the school board to fill the position in the high school department made vacant by the sabbatical leave of Mr. Ulmer. Her salary was fixed at $1,600 per year. Plaintiff contends that, inasmuch as the only schedule of salaries established by the school board on April 8, 1940, when his sabbatical leave was granted, was the substitute schedule of $5 per day, therefore, he is entitled to the difference between his

salary of $1,700 per year and the $900, the substitute pay for the school year of 180 days at $5 per day. Thus plaintiff claims $800 from the school board.

On the other hand, the school board contends that the schedule of compensation for sabbatical leaves adopted on June 10, 1940, controls in that matter and that plaintiff is entitled only to the difference of $100 between his salary of $1,700 and the $1,600 salary paid to the substitute teacher, Margaret Baker.

To decide this question it will be necessary to interpret the language of paragraph (d) of section 1216 of the School Code of 1911, as amended by the Act of 1937, which governs the payment of salaries to persons on sabbatical leaves.

In interpreting laws, the legislative intent controls. Section 51 of article IV of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, provides as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters— (1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation . . ."

The law governing the granting of sabbatical leaves was enacted for the purposes set forth in the act, namely, for restoration of health, study, or travel, or for other purposes at the discretion of the school board.

It enabled teachers to recuperate from illness without losing their position in the school system and it enabled others to spend a year in further study or travel to improve their education and increase their usefulness in the teaching profession, without having to surrender their position in the school system together with any seniority rights they might have. Those teachers whose leave is granted must agree to return to the school district for a period of not less than one year after such leave of absence. That would indicate that the intent of the legislature was to allow the teacher to improve his or her education and also benefit the school district granting the leave by having the ostensibly improved services of the teacher for at least one year after the completion of the leave.

In the light of the foregoing, we examine paragraph (*d*) of section 1216 of the Act of 1937, supra. The first part thereof provides that the person on leave of absence shall receive the difference between his or her regular salary and the salary paid to any substitute employe temporarily engaged because of such leave; provided it shall not exceed $1,600 for one year or $800 for one half year.

This part of the act seems clear in its intention that the teacher shall receive the difference between his regular salary and the amount paid for the services of a substitute teacher. The school district cannot make any savings by granting sabbatical leaves, and on the other hand a teacher whose salary has been increased by annual increments and raises and who receives a higher salary than the ordinary teacher because of his ability is given an incentive to take a sabbatical leave, increasing his value to the school district. The teacher receiving the higher salary is given the difference between the two salaries to encourage the teacher to take a sabbatical leave, the salary being intended to help him defray the expenses of his studies or travel.

The last sentence of paragraph (*d*) reads: "The salary paid to such substitute shall be the salary for substitute service, according to the salary schedule established by the local board." This sentence seems to be the part of the law from which the present controversy arises. Plaintiff contends that the only salary schedule in effect on April 8, 1940, when his sabbatical leave was granted, was the schedule for the payment of $5 per day for substitute teachers, which it is conceded in the agreed statement of facts was for teachers hired for short periods because of illness or incapacity of regular teachers. The school district contends that the sabbatical leave of plaintiff was granted subject to the salary schedule for sabbatical leaves subsequently adopted by the board on June 10, 1940. The controversy therefore narrows down to the one question, "Does the salary schedule for substitute teachers at the rate of $5 per day apply to the sabbatical leave of David C. Ulmer, or does the salary schedule adopted June 10, 1940, governing salaries for substitutes because of sabbatical leaves, apply to his leave?"

Under the Act of April 25, 1933, P. L. 69, 24 PS §1187, salary schedule is defined as "A schedule of minimum basic salaries, plus required increments, prescribed by any act of Assembly for the payment of salaries of teachers or supervisors."

The Act of June 12, 1939, P. L. 334, 24 PS §1169, provides that in school districts of the third class the minimum salary of a high school teacher shall be $1,200 per year, with a minimum annual increment of $100 and the minimum number of annual increments, four. We take judicial notice of the fact that the Honesdale Union School District is in the third class, and subject to this minimum salary requirement. We are of the opinion that a teacher hired for a period of one year as a substitute becomes a member of the teaching staff of the school district and is entitled to the benefit of

the minimum salary schedules as enacted by the legislature.

To uphold the contention that the substitute teacher should be paid in accordance with the substitute schedule of $5 per day, or $900 for a school year of 180 days, would be in direct violation of the law defining minimum salaries and would place the teacher on sabbatical leave in the position of profiting from an illegal act of his school board.

We are inclined to believe, after consideration of the act of assembly providing for sabbatical leaves and similar school legislation, that the legislature clearly intended that the school district should not profit financially by granting sabbatical leaves. They therefore made the condition that the teacher on leave "shall receive the difference between his or her regular salary and the salary paid to any substitute teacher temporarily engaged because of such leave". As we said earlier in this opinion, had the legislature stopped at the point indicated, there would be no dispute as to their intention to have the difference paid to the teacher on leave. However, when they added the last sentence to the paragraph, providing that the salary paid for such substitute service shall be in accordance with the salary schedule for substitute service established by the board, the law becomes confusing. Thus it is necessary to decide just how this last sentence affected the meaning of the statute. Taking into consideration the purpose of the act and the general trend of school legislation in recent years, we are of the opinion that the quoted sentence fixing the pay of substitute teachers serving in the place of those on sabbatical leave was a regulatory or restrictive regulation placed on school boards so that they would have to pay substitute teachers a uniform salary and to prevent boards through discrimination or chicanery from showing favoritism to some teachers and penalizing others who sought to takes a sabbatical leave. It parallels the Edmonds Act

fixing minimum salaries, the Tenure Act, and other acts of assembly which have endeavored to protect the teacher in his profession and to prevent unscrupulous, dishonest, or political boards from exploiting their teachers. Assuming that the schedule which the board had filed on June 10, 1940, had been adopted prior to April 8, 1940, when plaintiff was granted his leave, the board could have hired a teacher at any salary from $1,200 to $1,600 per year and plaintiff would have to accept the difference between his $1,700 salary and the salary paid to the substitute. In other words, even though a salary schedule is in existence, we believe that the board still has the right to hire any competent substitute at a legal salary provided in their sabbatical leave schedule; but let us go even farther in the matter. Let us assume that the school board was unable to secure a substitute at the salary set forth in the schedule, and they were compelled to pay $1,700 per year for such services, could plaintiff logically contend that he was entitled to a sum ranging from $100 to $500 per year under the salary schedule? We think not, for we believe that the intent of the legislature is clearly expressed in the first part of the act and that the lawmakers intended that the teacher on leave should be paid the difference between the amount of his salary and the amount *actually* paid for the substitute teacher who filled that position for the year. To hold otherwise would place an unreasonable and strained construction on the statute.

In ascertaining the intention of the legislature, it is to be presumed that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable: Commonwealth v. Repplier Coal Co., 348 Pa. 372.

The primary consideration of the school board in granting a sabbatical leave is to improve the school teaching system by allowing teachers a leave for further studies, and it is also their duty to see that the

school system does not suffer in that period by the hiring of incompetent substitutes, even though it might be to the financial gain of the teacher on leave, so that in hiring substitutes the primary consideration is not to hire the cheapest teacher but to hire the best teacher available for the position.

Plaintiff applied for a year's sabbatical leave, which was granted by the Honesdale Union School District at the meeting on April 8, 1940. Mr. Ulmer should have known, or by the exercise of due diligence could have known, that the school board had not adopted a substitute salary schedule for sabbatical leaves. He was granted such leave "in accordance with the provisions set forth in the Pennsylvania School Code". One of the provisions of the School Code governing sabbatical leaves was that substitute teachers should be paid in accordance with salary schedules adopted by the local board. In order to comply with the terms of the School Code, it was the duty of the school board to adopt a salary schedule, which they did on June 10, 1940, before Mr. Ulmer began his sabbatical leave. Plaintiff therefore was granted his leave subject to the adoption of a sabbatical leave salary schedule by the board, who were compelled to adopt a salary schedule in accordance with the minimum salary requirements for third class districts. The salary schedule adopted was the minimum salaries allowed by law, but the school board was not required to hire a teacher at the lowest salary set forth in the schedule. Their duty was, as we have said, to hire the best teacher for the position, in order to uphold a high standard of teaching in the school system. We cannot refrain from criticizing both parties for the laxity they showed in such an important matter. The application for and the granting of a leave for one year without either party mentioning the terms under which it was to be granted was very poor business for a teacher and certainly was careless on the part of the school board, who were han-

dling public moneys and administering the affairs of our most important public institution, the public school.

In order to uphold the contention of plaintiff that he is entitled to be paid the difference between $1,700 and a substitute salary of $900 per year, or even the difference between the $1,700 and the minimum legal salary of $1,200, we would have to penalize the taxpayers for the neglect of plaintiff and the school board to enter into a sabbatical leave agreement in a prudent and businesslike manner. To do so would cost the taxpayers either $800 or $400, as the case might be.

In construing an act of assembly, it is presumed that the legislature intends to favor the public interest as against any private interest: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, par. 52(5). We are of the opinion that the taxpayers should not be compelled to pay for plaintiff's failure to inquire into the terms of his leave, nor for the apparent failure of the school board to have a sabbatical leave salary schedule adopted at or prior to the time the leave was granted. However, we do think that inasmuch as a salary schedule had not been adopted when the leave was sought (a fact which Mr. Ulmer could have easily discovered) the leave was granted subject to the adoption of the schedule, that the school board did belatedly comply with the act of assembly, and that plaintiff is bound thereby.

The school board under the salary schedule could hire a teacher from the minimum salary of $1,200 per year to $1,600 per year. They chose to hire an experienced teacher with five or more years of teaching experience and paid her $1,600 for the year during which Mr. Ulmer took his sabbatical leave. Plaintiff is therefore entitled to receive "the difference between his regular salary of $1,700 and the salary of $1,600 paid to the substitute", or the sum of $100.

*Decree*

And now, July 28, 1944, for the reasons set forth, judgment is entered in favor of David C. Ulmer and against the Honesdale Union School District, defendant, in the sum of $100.